(No. 6518.   March 11, 1938.)

PHEBY EVANS, Respondent, v. FRANK G. DAVIDSON and THE BOISE GROCERY COMPANY, INC., a Corporation, Appellants.

[77 Pac. (2d) 661.]

Richards & Haga, for Appellants.

George Donart, James W. Galloway and Maurice H. Greene, for Respondent.

HOLDEN, C. J.—Between 4 and 5 o'clock in the afternoon of October 24, 1934, a collision occurred between two automobiles on the public highway about six miles north of Cascade, Valley county, Idaho. Ezra Evans was driving one of the cars. He had his wife, the respondent, with him. Appellant Frank G. Davidson, a salesman for the Boise Grocery Company, was the driver and sole occupant of the other car. Respondent Pheby Evans and appellant Frank G. Davidson were seriously injured, and Ezra Evans died in a Nampa hospital within a few days after the accident, from the injuries he sustained.

In December following the accident, Pheby Evans, as administratrix of the estate of Ezra Evans, deceased, commenced an action in the district court of Ada county against the appellants. She prosecuted that action in her own behalf and in behalf of the grown children of the marriage, to recover for the loss of the society and companionship of Ezra Evans, husband and father, and for funeral expenses, and damages to the family automobile. Appellants answered and also filed a cross-complaint, in which cross-action appellant Boise Grocery Company sought to recover damages to the automobile appellant Davidson was driving, and Davidson sought to recover damages for his injuries and also medical and hospital expenses.

On the same date, to wit, December 20, 1934, respondent commenced another action in the same court against appellants to recover damages for the injuries she personally sustained. Appellants denied the material allegations of her complaint and affirmatively charged her with contributory negligence, but did not plead contributory negligence on the part of Ezra Evans. These cases were consolidated for trial. At the trial, it was stipulated that the damage to the Evans car was $175, and the amount of Pheby Evans' expenses for medical treatment, etc., was admitted without objection. The damage to appellant Boise Grocery Company's automobile and the hospital and medical expenses incurred by appel-

lant Davidson were also stipulated, as well as that Ezra Evans died by reason of the accident. In the Pheby Evans case, the jury returned a verdict in her favor for $14,000, upon which the court thereafter entered judgment against appellants. Later, upon motion of appellants, the court granted a new trial. In the administratrix' case, the jury found against the administratrix and also against both appellants. Nothing further was done in the administratrix' case. In the Pheby Evans case, after granting appellants a new trial and vacating the judgment entered on the verdict for $14,000, the court entered judgment that she take nothing by her action, from which last judgment she appealed to this court (*Evans v. Davidson*, 57 Ida. 548, 67 Pac. (2d) 83). Upon that appeal, this court reversed the judgment of the trial court and remanded the cause, with instructions to proceed with a new trial. The Pheby Evans case was tried a second time on the 8th and 9th of June, 1937, and a verdict rendered in her favor, and judgment entered thereon, for $15,700. This appeal is from that judgment.

Appellants pleaded by one of their affirmative defenses that respondent was estopped from relitigating in her case the issue as to the contributory negligence of Ezra Evans, which issue, it was pleaded, was decided and determined by the jury in the administratrix' case. In support of that defense, appellants made the following offer:.

"We intend and expect to prove by this witness, and offer to prove by this witness (Charles H. Yerrington, then on the witness stand), that the jury did not consider or pass upon the issue as to the damage or loss to the widow or children by the death of Ezra Evans, or on the damage to the Evans automobile, or the right to recover for funeral expenses, but that the jury considered only the question as to whether Ezra Evans was on the wrong side of the road and that the accident was due to his negligence or contributory negligence, and that the jury by its verdict in the said administratrix' case and by the judgment decided that Ezra Evans was guilty of contributory negligence; and we expect this witness' answers to the questions we have asked to be in substance that the jury concluded that Ezra Evans was guilty

of contributory negligence and that the verdict covered only that issue and, with this explanation, we again ask the same three questions which were asked before.''

■■ It appears therefrom, among other things, that appellants offered to prove that the jury considered Evans was on the wrong side of the road, and, consequently, was guilty of contributory negligence; in other words, appellants thereby offered to prove *why* the jury reached its verdict. This court held on the former appeal that affidavits of jurors showing *why* or the *reasons* for the rendition of the verdict on the first trial were inadmissible. That holding is not only sound but it is also the law of this case. Applying that rule to the above-quoted offer of proof, it is clear that the trial court properly denied the offer.

■ The refusal of the trial court to instruct the jury to find for appellants is assigned as error. It is contended by appellants that there is no conflict in the evidence, and that "when there is no conflict in the evidence it becomes a question of law for the court and not a question of fact for the jury," and "that there was no evidence to justify submitting the cause to the jury, and the instruction for a directed verdict should have been given."

Respondent Pheby Evans, on direct examination, testified substantially as follows: That she and her husband had been deer hunting and had camped in Long Valley; that on the afternoon of October 24, 1934, they drove over to the main highway and started south in the direction of Cascade; that they were riding in a 1929 model Chrysler sedan; that her husband was driving the car; that he was driving at a speed of not over thirty-five miles per hour; that when they reached a point a little north of the residence of one Roy Hall, she saw a car coming at a high rate of speed; that she directed her husband's attention to the fact by telling him she knew it was going to hit them; that the (Davidson) car was traveling so fast it appeared to be weaving in the road, and that she could not tell which side of the road it was on; that when the approaching car got close, it turned directly in front of them and the two cars collided, after which she lost consciousness. On cross-examination, she testified substantially

as follows: That when she first saw the Davidson car, it was about a city block away from them; that Evans was driving along the smooth part of the road, probably the middle, and that there was no traffic on the road; that her husband was a good driver; that when she saw the other (Davidson) car coming, she shouted to her husband telling him to look at that car.

Roscoe Colton, a witness for respondent, testified substantially as follows: That he lived about five miles above Cascade on the east side of the highway; that on the afternoon of October 24, 1934, he drove out to the highway and made a trip up the road; that to get from his premises on to the highway, he had to pass through a gate on the east side of the road; that his wife was with him; that while shutting the gate he saw a Ford V-8 car go by in a northerly direction; that his attention was directed to the car by its speed which he estimated to be around sixty-five miles per hour; that he commented on the speed to his wife at the time; that he immediately closed the gate, got in his car, and drove up the highway in the direction of McCall, at a speed around thirty to thirty-five miles per hour; that the road was not slick; that when he reached the point on the highway where the accident occurred, the Davidson car was headed south, badly wrecked; that appellant Davidson was in the car; that another car was there, badly wrecked, and that respondent Pheby Evans was in that car; that the Evans car was headed west; that the left half front of the Davidson car had collided with the right front part of the Evans car; that he was able to determine by the tracks made by these cars that they collided about the left-hand side of the center of the road, being the left-hand side of a person going north, or west of the center thereof; that the collision occurred about midway between the center and the outside of the road and that the gravelled portion of the highway was about twenty feet in width; that arriving at the scene of the wreck, he saw the car tracks made by both the Evans and the Davidson cars; that he was able to trace the tracks of the Evans car in a northerly direction about 30′ from the point of collision, and the tracks of the Davidson car in a southerly direction about 50′; that the tracks

made by the Evans car were leading from the point of impact in a northerly direction to the center of the road, and that a distance about 30′ north of the point of impact, the tracks made by the Evans car were just about in the center of the road, and leading in a westerly direction from the center of the road toward the point of impact; that at the point where he could first see the tracks of the Davidson car, they were just about in the center of the road and were leading in a westerly or left-hand direction toward the west side of the road; that the highway was practically dry and that he had no difficulty in driving over it.

Robert Wilson, sheriff of Valley county, Idaho, a witness for respondent, testified substantially as follows: That when he arrived at the scene of the accident, both cars were on the west side of the highway; that the Evans car was faced at an angle pointing somewhat north, and the Davidson car on about the same angle pointed south; that he was able to trace the tracks of the Evans car north from the scene of the accident a distance of approximately 80′, and the tracks made by the Davidson car south from the wreck a distance of from 100′ to 200′; that at the point where he first saw the tracks of the Evans car, it was on the left-hand side of the road, the west wheels of the Evans car being about four feet east of the center of the road; that the tracks followed a general north and south direction until they got about 40′ and then turned to the right or westerly side of the road, and that at the moment of impact the front ends of both cars were on the west side of the center of the road, but that the rear ends were not; that the tracks of the Davidson car were going north from the point where he first observed them for a little more than half the distance to the wreck, and then swung west a distance of approximately 50′ or 60′ from the wreck; that the turn was not a sharp turn but was more than the ordinary turn a man would make if he were just maneuvering a car on the road; that at the point where the tracks of Davidson's car were first discernible, they were on Davidson's right-hand side of the road; that the brakes were applied to the Davidson car a distance of 40′ to 50′ before the point of impact; that the right half of the front end of the

Davidson car was the portion that collided with the left-hand corner of the radiator of the Evans car.

Appellant Frank G. Davidson, on direct examination, testified substantially as follows: That he was a salesman for the Boise Grocery Company; that he was driving around 35 miles per hour; that when he first noticed the Evans car, it was about 600 yards away; that the road was made of loose gravel which was hard to settle, and that there was a lane on each side of the middle of the road worn by the traffic, and that the road was about 24' in width; that when he first observed the Evans car, it was coming over the top of the hill from the direction of McCall; that the Evans car was then right square in the middle of the road, and that as it came down the hill it started to the other side; that he again saw the Evans car when he was at a distance of 75 or 100 yards from it, and that the Evans car at that time was on his (Davidson's) side of the road; that he did not know what Evans was doing; that he, Davidson, was going straight ahead and not thinking too much about it, and that the last thing he remembered was that Evans shot his car over here (indicating) and he (Davidson) applied the brakes; that it would have been impossible for him (Davidson) to pass Evans on his (Davidson's) right side.

On cross-examination, appellant Davidson testified substantially as follows: That when he first saw the Evans car, it was coming down the middle of the road about 600 yards away and veering slightly toward Evans' left; that he was about 75 to 100 yards away from Evans when Evans got clear on to Davidson's right-hand side of the road; that he, Davidson, was back at least 100' when he started pulling to his left, and that all the time he was watching the Evans car.

It will be observed that the evidence is conflicting and contradictory in important and material particulars. We will note a few, taking first the speed of the Davidson car as it approached the Evans car at about the time the accident occurred. Colton testified that when the Davidson car passed him it was traveling around sixty-five miles an hour. Respondent testified it was coming "awful fast," that it was weaving on the road, and that it was coming so fast she could

not tell which side of the road the Davidson car was on. But Davidson testified he was only driving around 35 miles an hour. As to the speed of the Evans car, Davidson testified that it was "going pretty fast," probably 40 to 50 miles an hour. Culp, a witness for appellants, fixed the speed of the Evans car, as it passed him and one Pitkin about 8 miles from the scene of the accident, at from 40 to 50 miles an hour, and Pitkin, also a witness for appellants, fixed the speed of the Evans car at from 40 to 50 miles an hour, while respondent fixed the speed of the Evans car at not over thirty-five miles an hour.

The evidence is also conflicting and contradictory as to the position of the Evans car on the highway as it approached the Davidson car at the time of the accident. Sheriff Wilson placed the Evans car on the left (Davidson's right) hand side of the road 80' from the point of collision, that being the farthest point north the sheriff could trace the tracks of the Evans car. At about half that distance, the sheriff testified, the Evans car turned to the west or to Evans right-hand side of the road. Davidson placed the Evans car right square in the middle of the road, the first time he saw it, about 600 yards from the point of collision. When he again saw the Evans car, Davidson said it was from 75 to 100 yards from him and in the middle of his (Davidson's) right-hand side of the road. Colton placed the Evans car in the center of the highway, 30' from the point of collision, which was the farthest point north he could trace the tracks of the Evans car; that the tracks of the Evans car led in a westerly direction front a point 30' north of the place where the cars collided to the point of impact. Respondent testified that the Evans car was probably in the middle of the highway when she first saw the Davidson car, and that the Davidson car was then about a city block from them.

And the evidence is conflicting and contradictory as to the position of the Davidson car on the highway as it approached the Evans car at the time of the accident. Sheriff Wilson, by tracing its tracks, placed the Davidson car at a point from 100' to 120' south of the collision, on Davidson's right-hand side of the highway, with the east wheels of the Davidson car

about two feet west of the east shoulder of Davidson's right-hand side of the road; the Davidson car traveled on in that position for a distance of 60' when, the sheriff stated, it turned west; that it was not a sharp turn but was more than the ordinary turn a man would make if he were just maneuvering a car on the road. Colton placed the Davidson car in the center of the highway at a point 50' south of the point of collision, that being as far in a southerly direction as Colton could trace the tracks of the Davidson car. Colton also testified that from that position in the center of the highway, the tracks of the Davidson car led in a westerly direction toward the west (Evans) side of the road. Respondent testified that the Davidson car was traveling so fast she could not tell which side of the road it was on.

The evidence is also rather conflicting and contradictory in the following particulars: The sheriff testified that when he arrived at the scene of the accident, the Evans car was facing north, and that the Davidson car on about the same angle, pointed south; and, from an examination of the car tracks, the sheriff stated that at the moment of impact the front ends of both cars were on the west side of the center of the road, but that the rear ends were not. On the other hand, Colton testified that the Evans car was headed west, and, from an examination of the same car tracks, he stated, in effect, that the collision occurred on the west side of the center of the highway, midway between the center of the highway and the west side.

In support of the contention that the trial court erred in denying the request that the jury be instructed to find for appellants, it is also urged that there is no conflict in the evidence as to Evans' intoxicated condition at the time of the accident. The record shows that for several days prior to the accident the Evans had camped about 7 miles from the town of McCall; that on the day of the accident, Evans went to town for some assistance in connection with his car; that Evans called at the Goodman garage during the forenoon but Goodman happened to be out. It appears that Evans called at the Goodman garage again about 2:30 in the afternoon. It further appears that between 10:30 in the forenoon and

2:30 in the afternoon, Evans was drinking whisky and beer and was under the influence of intoxicating liquor, and that he took a pint of liquor with him when he left McCall to return to his camp. When Evans returned to the Goodman garage at about 2:30 in the afternoon, Goodman took him back to camp. Goodman, a witness for appellants, and by whose testimony they are bound, testified that he had known Evans for 35 years; that on the way out to the camp Evans repeated a lot of statements about family affairs; that he was more jovial than usual and was feeling his liquor; that Evans was not drunk, did not stagger, and seemed possessed of his faculties; that after he, Goodman, fixed the Evans car, he turned the car around and put it on the road out of camp; that there was a steep hill about 200 yards long leading from camp out to the highway that had to be driven in low gear; that Evans drove up the hill and over a dirt road which was rather slick, having snow on it in places. And, while there is evidence that Evans was under the influence of liquor at McCall, there is no direct evidence that he was still under the influence of liquor an hour and a half afterward, at the time of the accident. It is a matter of common knowledge that intoxicating liquor does not affect all men alike, that some men are more easily intoxicated than others and that some men recover from the effect of intoxicating liquor sooner than others.

Furthermore, and as above pointed out, it appears from the testimony of Goodman that while Evans was under the influence of liquor he was not drunk, did not stagger, and seemed possessed of his faculties. While one person might reasonably draw the inference that Evans was still, and to some extent, under the influence of liquor, another might, with equal reason, draw the conclusion either that he was not under the influence of liquor at all at the time of the accident, or if so, not so incapacitated as to be unable to exercise reasonable and ordinary care in the operation of his car at the time of the accident. In *Black v. City of Lewiston*, 2 Ida. 276, 13 Pac. 80, this court held that the plaintiff should not be nonsuited unless it appears that the evidence in his behalf, upon the most favorable construction the jury would

be at liberty to give it, would not warrant a verdict for him. And, in *Small v. Harrington,* 10 Ida. 499, 79 Pac. 461, we held that the court should not take the case from the jury unless, as a matter of law, no recovery could be had upon any view which properly could be taken of the evidence. To the same effect, see *Idaho Mercantile Co. v. Kalanquin,* 7 Ida. 295, 62 Pac. 925; *Kroetch v. Empire Mill Co.,* 9 Ida. 277, 74 Pac. 868; *York v. Pacific etc. R. Co.,* 8 Ida. 574, 69 Pac. 1042; *Later v. Haywood,* 12 Ida. 78, 85 Pac. 494; *Adams v. Bunker Hill etc. Min. Co.,* 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844; *McAlinden v. St. Maries Hospital Assn.,* 28 Ida. 657, 156 Pac. 115, Ann. Cas. 1918A, 380; *Lowary v. Tuttle,* 36 Ida. 363, 210 Pac. 1006; *Colgrove v. Hayden Lake Irr. Dist.,* 40 Ida. 489, 235 Pac. 434; *Schleiff v. McDonald,* 37 Ida. 423, 216 Pac. 1044.

And this court held in the recent case of *Bennett v. Deaton,* 57 Ida. 752, 68 Pac. (2d) 895, 902, following former decisions, that "where the minds of reasonable men might differ, or where different conclusions might be reached by different minds, the questions as to the existence of negligence and contributory negligence, are questions for the jury."

██ There being no direct evidence that Evans was under the influence of intoxicating liquor at the time the accident occurred, to enable the jury to find that Evans was at that time still under the influence of liquor, it would be necessary to base the finding upon the circumstances that Evans was drinking whisky and beer at McCall and was under the influence of liquor there. In other words, the finding would necessarily be based upon circumstantial evidence. This court has long been committed to the rule that in an action to recover damages resulting from alleged negligence, if the facts are such that more than one reasonable conclusion or inference can be drawn from the circumstantial facts in evidence—one that negligence has been shown and the other that negligence has not been shown—if the jury decides that negligence has been shown, the action of the jury should not be disturbed. (*Calkins v. Blackwell Lumber Co.,* 23 Ida. 128, 129 Pac. 435; *Miller v. Northern Pac. Ry. Co.,* 24 Ida. 567, 135 Pac. 845, Ann. Cas. 1915C, 1214, 48 L. R. A., N. S., 700;

*Cooper v. Oregon Short Line Ry. Co.*, 45 Ida. 313, 262 Pac. 873; *Claris v. Oregon Short Line Ry. Co.*, 54 Ida. 568, 33 Pac. (2d) 348.)

Appellants insist that "in order to invoke the last clear chance doctrine, plaintiff must plead and prove that the defendant, after perceiving the danger and in time to avoid it, negligently refused to do so," and contend that respondent's complaint contains no suggestion that she and her husband would rely upon the last clear chance doctrine, and that that doctrine has no application where there is concurrent or contemporaneous negligence by plaintiff; therefore, that the trial court erred in instructing the jury on the last clear chance. We have examined respondent's complaint and find, among other things, that in addition to alleging specific acts of negligence, she further alleged that Davidson was driving his car at a dangerous and excessive speed, and with a wanton and reckless disregard of the rights of others traveling on the highway. And we have also examined appellants' answer to respondent's complaint and find that they denied any negligence on the part of Davidson and alleged that "said accident and the resulting injuries of said plaintiff Pheby Evans, if any, were directly caused and contributed to by the fault, carelessness, negligence and recklessness of said plaintiff, Pheby Evans."

In *Mosso v. Stanton Co.*, 75 Wash. 220–225, 134 Pac. 941, L. R. A. 1916A, 943, plaintiff, in addition to specific allegations of negligence, alleged that the defendant was operating a motor truck "recklessly and without regard to the safety of pedestrians on the highway." The answer denied any negligence on the part of the defendant and affirmatively alleged that plaintiff's injury was due to his own negligence. The identical situation presented in the case at bar. As to the necessity of expressly pleading that the "defendant, after perceiving the danger and in time to avoid it, negligently refused to do so" (the last clear chance rule), to enable the plaintiff to invoke the rule, the Washington court held that the allegations of the plaintiff and the denial of the defendant were sufficient to put in issue the last clear chance of the defendant to avoid the accident. In the Mosso case, *supra,* it

was also contended, as in the case at bar, that where there is concurrent or contemporaneous negligence by plaintiff, the last clear chance rule cannot apply. The Washington court held that, even assuming that plaintiff was negligent in the first instance, it was for the jury to say whether his negligence continued right up to the time of the accident. In *Hooker v. Schuler*, 45 Ida. 83, 260 Pac. 1027, this court had before it the identical question passed upon by the Washington court in the Mosso case, *supra*, where we adopted the Washington rule and held that the last clear chance doctrine is authorized by the pleadings, where the complaint alleges negligence of the defendant, and the answer denies it, and alleges that the accident was caused by the plaintiff's negligence.

As to the proof on the issue of the last clear chance, in addition to again directing attention to the testimony of the various witnesses hereinbefore reviewed, we deem it sufficient at this point to simply call special attention to the testimony of appellant Davidson to the effect that he was watching the Evans car "all the time," and to Colton's testimony that by tracing the car tracks he found that the Evans car was in the center of the highway at a point 30' north of the point of collision, and that the Davidson car was also in the center of the highway at a point 50' south of the point of impact, so that if Davidson was watching the Evans car, as he said he was, he must have seen it when, at a distance of 80' from him, it turned from the center of the highway to Evans' right-hand side of the road. By simply turning to his right-hand side of the highway, then, Davidson could have easily passed the Evans car on his (Davidson's) own side of the road, and thus have avoided the accident. It was for the jury to pass on that and other evidence in the record bearing upon the issue of the last clear chance and it did so and found the issue against appellants.

Appellants assign error in the giving of instructions numbered 9, 10, 11, 12, 13, 14, 17, and 19, in this: That "the instructions, when read and considered together and as a whole, would seem to be too general and too abstract, inconsistent and contradictory; and we think they are misleading and confusing to a jury of laymen." If these instructions

were too general, and appellants desired other instructions upon the features of the case covered too generally by such instructions, it was their duty to present them to the trial court. (*Lessman v. Anschustigui,* 27 Ida. 127, 133, 215 Pac. 460; *Boomer v. Isley,* 49 Ida. 666, 674, 290 Pac. 405; *Advance-Rumely T. Co., Inc., v. Jacobs,* 51 Ida. 160, 4 Pac. (2d) 657.) In addition to making the objection that said instructions are too general, appellants complain that the court instructed the jury upon matters not issues in the case. For example: The court defined duties and driving speed at crossings of electric, steam, and street railways, and in passing schoolhouses or children going to or leaving school, or at highway intersections, and when the driver's view is obstructed. Giving instructions not founded on issues will not warrant reversal where, as here, no substantial injury resulted. (*Asumendi v. Ferguson,* 57 Ida. 450, 65 Pac. (2d) 713.)

Appellants also complain that the court erroneously instructed the jury regarding the law applicable to a guest riding in an automobile which becomes involved in an accident. By their answer, appellants pleaded that respondent was negligent, first, as a guest, and, secondly, by imputing to her the alleged negligence of Ezra Evans. Therefore, we find no error.

Judgment affirmed, with costs to respondent.

Morgan, J., and Givens, J., concur.

Ailshie, J., did not participate in the consideration of the case.

Budge, J., did not participate in the opinion.

Petition for rehearing denied.