The two above entitled suits were consolidated for the purpose of trial but separate judgments were entered in each case. The plaintiffs in one suit are the widow and heirs of James Dunn who was electrocuted on September 7, 1941, while assisting the plaintiff in the other suit, Charley Dawson Welsh, in drilling a well on the premises occupied by Welsh some four or five miles from the City limits of Baton Rouge. Welsh had leased the property from Tony Roppolo, and the defendant Utilities Company, under permission from Roppolo, had erected a high powered line across this property, which line runs along Essen Road. This power line consisted of three wires; the top wire is called the primary wire, carrying 2,300 or 2,400 volts; the middle wire, known as the neutral or ground wire, carries no electrical current except to the ground, and the bottom wire carries a low voltage of 120 volts. At the point of the accident, the top wire was 28 1/2 feet from the ground, the center wire a little more than 25 feet from the ground, and the bottom or secondary wire was about 23 1/2 feet from the ground.
On Sunday morning, September 7, 1941, the deceased Dunn offered his services to Welsh in drilling this shallow well. There were several other men present, all of whom were negroes except Roppolo. Welsh built a frame in the form of a tripod 8 or 10 feet high with a cross board through which the well pipe was run in order to hold it in place. They were using a bit or auger with which the well was being bored. This auger was attached to a drill stem or iron *Page 724 
pipe, the combined length of the auger and pipe being some 31 or 32 feet. The lower part of the pipe was 2 inches in diameter, and the upper part was 1 1/2 inches in diameter. The well was located at an off-set of 8 or 10 feet from a point directly under the power line. As the well was drilled, it was necessary to pull out the auger from the hole in the ground and remove the mud and dirt from the bit. A board was placed near the hole for the purpose of resting the auger on it while the auger was being cleaned. It was during one of these operations that Dunn was electrocuted and Welsh received a severe electric shock.
The auger and pipe attached to it had been pulled out of the hole and placed on the board near the well for cleaning. Welsh and Dunn raised the auger with their hands about one foot from the ground in order to place it back in the hole, and for some reason the top of the pipe came in contact with the high powered wire, resulting in the electrocution of Dunn who died almost immediately after the current penetrated his body. Welsh received at the same time a shock but not of sufficient force to prove fatal.
The widow and heirs of Dunn brought this suit to recover damages on account of his death, the widow claiming $25,100 and each of his four children claiming $8,000. Welsh brought a suit claiming damages for personal injuries in the total sum of $12,500. The trial judge dismissed the suit of the plaintiffs in both cases, and they have appealed.
The negligence charged to the defendant company is that it failed to insulate this high powered wire, failed to post proper warning signs of danger, and constructed the power line too close to the house in which Welsh lived, and did not sufficiently clear the line of trees. The defendant company denied any negligence and alleged that its power line was constructed in a proper manner and according to regulations. In the alternative, defendant pleaded contributory negligence on the part of Dunn and Welsh.
There seems to be little dispute as to the facts. It is conceded that the high voltage wire was not insulated. It is the principal contention of the plaintiffs that the failure to insulate this high voltage wire constituted negligence. In fact this is about the only ground of negligence under which the plaintiffs could hope to hold the defendant liable. The evidence shows there were no trees or obstructions at the point of the accident which could have had anything to do with the accident. The defendant company had a right of way across the Roppolo property, and the line was constructed under a permit.
There were several houses — estimated all the way from 10 to 30 — within the neighborhood of the Roppolo property. Several electrical experts testified in the case, one of them being Dr. C.W. Ricker, the head of the Electrical Engineering Department of Tulane University, and who has no connection with the defendant company. It appears from the testimony of the experts that it is not customary to insulate high voltage wires, except to protect them from cross wires or other objects within close range. Reference was made to the National Electrical Code gotten out by the Bureau of Standards of the National Government in which safety rules as to the construction and maintenance of electric lines are provided for. Copies of these regulations are in the record. These regulations provide that an electric line carrying a voltage of 750 to 15,000 volts must clear the ground by at least 15 feet, and there is no provision requiring the wires carrying such voltage to be insulated.
It is clear from the evidence that the accident occurred when the top of the pipe which these two men were handling slanted or leaned over from a vertical position while the pipe was being lifted and the top of the pipe came in contact with the high voltage wire. While there was some effort made to show that the pipe was drawn to the wire, or that the highly charged current jumped over a space and contacted the pipe, in our opinion, the facts show that the top of this pipe fell over or leaned over and came in contact with the high powered wire.
Counsel for plaintiffs rely very largely on the case of Hebert v. Lake Charles Ice, Light and Waterworks Company Ltd.,111 La. 522, 35 So. 731, 64 L.R.A. 101, 100 *Page 725 
Am.St.Rep. 505, in support of the claim that it was the duty of the defendant to insulate the high voltage wire. There is a statement in the opinion in that case to the effect that it is the duty of a light company carrying electricity by over head wires strung along the streets of a city to keep its wires insulated in order to guard against the effect of objects coming in contact with the wires, yet the holding in that case must be restricted to the facts presented. The defendant in that case had failed to insulate its wires where a telephone wire was built directly above and across the electric wire, the injury in that case was caused by reason of the breaking and the falling of the telephone wire against the electric wire which was not insulated. The deceased came in contact with the electric wire which had fallen to the ground.
[1] An electric company is under the duty of insulating its high voltage wires where they cross or are likely to come in contact with other wires and other objects which may transmit the current to points and places at which it may be reasonably apprehended that persons may come in contact with the current. The place at which the men were drilling the well in this case was in a yard near a residence, and the electric company could not have reasonably anticipated that these men would raise a pipe or other object over 28 feet from the ground and thus come in contact with this wire.
The case of Bujol et ux. v. Gulf States Utilities Company, La. App., 147 So. 545, decided by this court in 1933, was very similar to the situation in the present case. In that case a young man was assisting in connecting a water pipe line along the highway then under construction within the corporate limits of the town of Jennings, the high powered wire running through an abandoned rice field enclosed within a barbed wire fence. Young Bujol was helping raise a water pipe over 22 feet long in order to shake the rust out of it before laying it in the ground along side the highway. He was standing on the top or the side of a dam just inside the barbed wire fence and almost directly under the power line. The deceased and his helpers were standing the pipe on end to clear it of rust when the top end of the pipe came in contact with the high voltage wire and resulted in the electrocution of young Bujol. Among the charges of negligence leveled against the electric company in that case were its failure to insulate the high powered wire and its failure to give proper warning.
This court found that no negligence was shown on the part of the defendant in that case because of its failure to insulate its wires or post warning signs. The only difference in that case and the present case is the fact that in the cited case the accident occurred along the side of a highway and inside an abandoned rice field, while in the present case the accident occurred along a road in a suburban area and inside the yard of a private residence.
The case of Webb v. Louisiana Power Light Company, La.App, 199 So. 451, 453, decided by the Second Circuit in 1940, is even more pertinent to the present case and is decisive of the issues here involved. Webb was electrocuted while pulling the pipe from a well in his yard. Several joints of pipe had been pulled from the well when the deceased and the men helping him lost control of the pipe and it fell against a hightension wire running parallel with the yard fence and a gravel road, the wire being a little over 24 feet from the ground and 18 or 19 feet from the well from which the pipe was being drawn.
[2] After stating the law as it relates to the duty of an electric company to protect its high powered lines, the court said in the Webb case:
"The Bureau of Standards of the United States Department of Commerce, as is disclosed by the evidence adduced in the instant case, provides safety rules for the installation and maintenance of electrical supply and communication lines. These rules permit the employment of uninsulated wires, such as are involved herein; but require that they have a minimum vertical clearance above the ground of 15 feet where they cross over spaces on ways accessible to pedestrians only. As before shown, defendant's line affords a vertical clearance above ground of more than 24 feet, or 9 feet in excess of the stated minimum; hence there was no violation by *Page 726 
defendant of the Federal government's safety requirements.
"It appears to us that defendant fulfilled all legal duties imposed on it. Although the wires in question were not insulated, there was a compliance with the other alternative, namely, the placing of them beyond the danger line of contact with human beings. While engaged in the ordinary course of their affairs, pedestrians would experience no harm from them. Defendant could not have reasonably anticipated that decedent would withdraw from the ground connected well pipe of length, here more than 30 feet, that would make contact with the transmission line. On the contrary, it could have reasonably expected that in the event of the pulling of the pipe from the well, a disassembling of it, joint by joint, would be the course pursued."
As we have reached the conclusion that the defendant company was guilty of no negligence, there is no occasion to discuss the pleas of contributory negligence in these cases.
For the reasons assigned, separate decrees will be entered in these cases affirming the judgments appealed from.