VERBETEN, by Guardian *ad litem,* and another, Appellants, vs. HUETTL and others, Respondents.*

*October 13—November 16, 1948.*

* Motion for rehearing denied, with $25 costs, on January 18, 1949.

512

For the appellants there was a brief by *Michael Burns* of Seymour, attorney, and *Benton, Bosser, Becker, Parnell & Fulton* of Appleton of counsel, and oral argument by *Mr. Burns* and *Mr. David L. Fulton.*

For the respondents there was a brief by *Bie, Welsh, Trowbridge & Wilmer* of Green Bay, and oral argument by *F. N. Trowbridge.*

WICKHEM, J.    Defendants Huettl were in the business of operating school buses in the vicinity of Seymour, Wisconsin. The bus involved was registered and equipped as a school bus. It made two separate runs, one for parochial and the other for public school children.    There was no contract between the Huettls and the school district and transportation was arranged and paid for by the parents.    Marion Verbeten was just short of thirteen years of age.    She and her two sisters, together with Arlene Sachs and other children, entered the bus at Seymour.    The bus was driven by Joseph Huettl and immediately before the collision proceeded in a northerly direction on County Trunk Highway C south of Seymour.    It was then about 5:20 p. m. on November 26th and was dark.    The bus approached the intersection of Highway C with Highway EE. County Trunk Highway C is a nine-foot concrete highway bordered by nine-foot gravel shoulders.    Highway EE is a twenty-two-foot gravel roadway.    The bus had a single exit door in the front.    It crossed Highway EE and came to a stop on the northeast corner of the intersection.    After it stopped its left wheels were on the nine-foot concrete highway. The front of the bus was so close to a ditch and culvert that plaintiff and the other children could not pass to the front of

the bus but were compelled to pass to its rear. At the time the bus was stopped the driver observed a car coming from the north about one hundred yards away. He made no mention of this car to the children but permitted them to alight. The Sachs girl left the bus first and proceeded toward her home which was on the same side of County Trunk Highway C as that on which the bus stopped. The three Verbeten children proceeded to the rear of the bus preparatory to crossing County Trunk Highway C from east to west in the direction of their home. Carol Verbeten crossed in safety; Marion Verbeten had proceeded between four and five feet on the concrete when she was struck by the car coming from the north. According to the evidence her younger sister was two or three feet to the west of the bus and Marion was a short distance ahead of her. In the meantime, after discharging the school children the bus proceeded north about fifty feet when the screaming of the brakes directed the driver's attention to the accident. Neither plaintiff nor the sister who was just behind her claimed to have seen the car before the collision. There was testimony that the children had had general instructions in school as to care and that these included directions to walk around the front of the bus when crossing to the opposite side of the highway. Plaintiff testified that she knew of this requirement but could not obey it because of the position of the bus.

At the outset it may be taken as established that the bus stopped on the northeast intersection of Highway C with Highway EE and in such a position that the Verbeten children could not pass to the front of it. Question No. 3 which inquired whether the driver of the bus was negligent in stopping his bus on the northeast corner of the intersection was answered "Yes" by the court, but the court found that this default was not a cause of the accident. It appears from the memorandum of the trial court that these questions were answered on the theory that the driver was negligent in stopping his bus in such a place as partly to block Highway EE but

that this negligence was not a cause of plaintiff's injury. We shall not consider the propriety of submitting the question. It is perfectly evident that the court was right in deciding that whatever negligence was involved in stopping the bus with a portion of its rear obstructing "EE" had nothing to do with this accident. The jury had a right to find in subsection (a) of question No. 5 that the driver was not negligent in failing to give instructions to plaintiff as to the care she should exercise in crossing the road after leaving the bus. The evidence is clear that Marion Verbeten had received full instructions fairly recently and there was no need to repeat these each time that she was discharged from the bus.

Question 5 (b) inquiring whether the driver was negligent in failing to warn plaintiff that a car was coming from the north was answered "Yes" by the jury but the cause question was answered "No." The supportability of this item of the special verdict should, we think, be considered in connection with other and more general matters dealing with the issues in this case. Plaintiff offered in evidence, but the court refused to receive, an administrative order applicable to the situation. Upon the rejection of this offer the subject matter was given no further consideration either by the judge or jury. The applicable rule is contained in general order M. V. D. 103 issued jointly by the department of public instruction and the motor vehicle department of Wisconsin and was in effect at the time of the accident. The preamble to the rules states that "in the interest of promoting safe transportation of school children on Wisconsin highways, the following regulations relating to the construction, equipment, maintenance, and operation of motor vehicles used for the transportation of children to and from school are hereby jointly prescribed. . . ." The order defines a school bus as follows: " 'School bus' as used herein is defined as any motor vehicle which is owned or operated by a public or governmental agency, or privately owned and operated for compensation when such vehicle is used to

transport school children to or from school. . . ." Paragraph 41 of the order provides "after discharging passengers driver shall make sure that road is clear before allowing children to cross, children obliged to cross the road should be required to walk around the front of the standing bus, and bus shall not proceed until children are safely across."

Two contentions are made by respondent in respect of this order: (1) That it is inapplicable to the bus in question because the bus is not a vehicle "transporting, under written contract with any school or school district, children to and from school." Sec. 110.035, Stats. (2) That it is a rule of discipline and not a rule of safety.

The first contention requires a consideration of applicable statutes. Sec. 194.02, Stats., contains the grant of power to the motor vehicle division under the authority of which the order was issued.

"194.02 *Legislative intent.* It is hereby declared to be the purpose and policy of the legislature in enacting chapter 194 to confer upon the motor vehicle department and the public service commission the power, authority and duty to supervise and regulate the transportation of persons and property by motor vehicles upon or over the public highways of this state in all matters, whether specifically mentioned herein or not, so as to protect the safety and welfare of the traveling and shipping public in their use of the highways; to relieve the existing and all future undue burdens on the highways arising by reason of the use of the highways by motor vehicles; to carefully preserve, foster and regulate transportation to the end of developing and preserving each separate type of the transportation system by highway and rail adequate to meet public needs."

Chapter 194, Stats., is entitled "Motor Vehicle Transportation Act," and the section in question, without any doubt whatever, vests the motor vehicle department with the power to regulate in the interests of safety the transportation of persons by motor vehicle.

Sec. 40.34, Stats., in a chapter entitled "School Districts," provides:

"40.34 (3) . . . The commissioner of the motor vehicle department shall adopt and enforce rules and regulations to cover the design, construction, inspection and operation of all vehicles used for the transportation of school children, and such rules and regulations shall by reference be made a part of any contract for transportation of school children. All drivers or operators of school buses shall be under written contract with the school district for which such drivers or operators transport pupils. . . ."

So far we have no difficulty whatever in arriving at the conclusion that independently of all other sections the motor vehicle department has jurisdiction to regulate school buses in the interests of public safety; that this power is not diminished in any manner by sec. 40.34 (3), Stats., which repeats the provisions in respect of school buses and requires such rules and regulations to be made a part of any contract for transportation of school children. We do not consider that the requirement that school districts enter into written contracts for such transportation, where they assume to furnish it, restrains the power of the motor vehicle department under sec. 194.02, Stats. It does not purport to do so and in terms applies to all vehicles used for the transportation of school children. The section principally relied on by respondents is sec. 110.035, Stats., in a chapter entitled "Motor Vehicle Department." This section is labeled "additional powers and duties" and provides:

"110.035 *Additional powers and duties.* The commissioner of the motor vehicle department shall have the power and it shall be his duty to prescribe reasonable rules and regulations setting forth the conditions under which school buses may be operated; *a 'school bus' being defined to be any motor vehicle transporting, under written contract with any school or school district, children to and from school,* or used in

transporting school basketball, baseball or football teams and school bands to and from such school or district."

From the fact that this section vests the motor vehicle department with additional powers and duties and does not purport to restrict earlier and much broader grants of power, we think that the view of the trial court that the power of the department is limited to cases where the proprietor of a school bus has a written contract with a school district does not operate to limit the jurisdiction vested by the other sections heretofore set out. We are of the view that the general order sought to be introduced in evidence here was applicable and within the power of the motor vehicle department to prescribe.

We are not concerned with the fact that this order was not admitted into evidence. This court will take judicial notice of it. For analogous cases on the point of judicial notice see *Nicolai v. Wisconsin Power & Light Co.* 227 Wis. 83, 277 N. W. 674; *Wisconsin Truck Owners Asso. v. Public Service Comm.* 207 Wis. 664, 242 N. W. 668; *Wisconsin Power & Light Co. v. Beloit,* 215 Wis. 439, 254 N. W. 119. The difficulty in this case is that because of its assumed inadmissibility the scope and effect of the order did not receive the consideration of the court or if there was a jury question in respect of it, that of the jury.

We are not impressed with the contention that the order involved is not a rule of safety. It specifically purports to be such a rule and it imposes duties upon the driver that we cannot say are not reasonably calculated to promote the safety of the children. Hence, we think that this case should be approached from the viewpoint of the order in question. A great deal is said by appellant concerning the high degree of care owed to passengers by a bus driver who is carrying school children; that this is a common-law duty and that it exists even though the carrier is not a common carrier by strict legal definition. We pass these contentions because here we deal with specific safety rules governing the conduct of the driver and establish-

ing precisely the standards of care. · In Restatement, 2 Torts, p. 746, sec. 285, comment *b,* annotating a rule that a standard of conduct may be established by a legislative enactment or a judicial decision or may be applied by the trial judge or jury if there be no such legislative enactment or judicial decision it is stated that "any one or more of the subsidiary standards may be established by a legislative enactment, which is final and conclusive, except in so far as the enactment requires construction or creates a standard so vague as to require definition by a court or jury before its application to the facts of a particular case. Whether the legislative body of a municipal subdivision of a state or an administrative board or commission has power to create a standard of conduct obligatory between citizen and citizen is a question of public law and is not within the scope of the Restatement of this subject. *In so far as there is such power, a municipal ordinance or a rule of such a board or commission has the same force as a statute enacted by the legislature of a state or by congress."*

We are dealing then with a rule that has·all of the scope and effect of a safety statute, the violation of which is negligence *per se.* The rule requires (1) that the driver make sure that the road is clear before allowing the children to cross; (2) that he require the children to walk in front of the bus; and (3) that he shall not drive on until the children are safely across. It is argued that this rule has no relation to safety because the children will frequently be required to jaywalk and to subject themselves to danger from cars coming from the same direction as the bus. This is not a valid objection to the rule which requires the driver effectively to take charge of the children when they leave the bus. The rule implies that he may not stop his car at a point where the children cannot pass in front of it without violating the rules of the road. Since it is of the essence of the rule that the children cross under his observation and supervision, stopping the bus at a point at which it is physically impossible for the children to cross to

the front of it, or stopping the bus at a point where the children must jaywalk in crossing the street, is as much within the prohibition of the rule as if specifically mentioned. In a situation where there are marked crosswalks the driver must stop on the near side of the intersection. The suggestion that passing to the front of the bus is necessarily as hazardous as passing to the rear of it does not impress us. No rule could completely eliminate the hazards of crossing, but a rule which requires a driver to see that the road is clear and that the children cross under his observation comes as close to securing safety as is reasonably possible. The administrative bodies which enacted the rule, doubtless had in mind as assistance and implementation to it, the provisions of sec. 85.16 (12), Stats., which requires other vehicles upon meeting or overtaking the school bus, which is stopped on the highway for the purpose of receiving or discharging any school children, to approach or overtake at a speed not exceeding fifteen miles per hour. The final requirement of the rule that the driver shall wait until the children are safely across the street is based not merely on the physical hazard the bus would otherwise present but is a part of the requirement that the driver keep the children in view until they are safely across the street. It will thus be seen that the general duty of the driver is to be the monitor of the children and to see that their safety is secured so far as his supervision can secure it. This duty is not discharged by general instructions now and then to the children as to the manner of their procedure. Even when the children know the rules of care it is within their nature at times to be careless, hurried, and impulsive and it is these propensities the rule seeks to guard against. It is perfectly clear from the evidence that the driver defaulted, (1) in stopping his bus at a point where the children could not cross to the front of it; (2) in not obliging them to walk to the front of the bus; (3) in permitting them to cross when he knew that another car was

approaching and might create a hazard to them; and (4) in driving away before the children were safely across the street. We are satisfied that these defaults considered together operated as a general abdication and neglect of the driver's affirmative duties under the rule and were causes of this collision. The foreseeability element is, of course, furnished by the rule itself and it is clear to us that this accident would not have occurred had the driver discharged his duties as hereinbefore defined. Under these circumstances we are of the opinion that there were no issues for the jury except the assessment of damages and since there is no attack upon the jury's award both plaintiffs should have judgment for the amounts found by the jury.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiffs in the amounts found by the jury to constitute their respective damages.

BROADFOOT, J., took no part.