258 P.2d 361

**PROBART et al. v. IDAHO POWER CO. et al.**

No. 7855.

Supreme Court of Idaho.

June 10, 1953.

Thatcher, D. J., dissented.

Merrill & Merrill, Pocatello, Hawley & Marcus and A. C. Inman, Boise, for appellant.

E. B. Smith, Boise, for Idaho Compensation Co.

Robert M. Terrell and Anderson & Anderson, Pocatello, for respondents.

## On Rehearing.

THOMAS, Justice.

Plaintiffs, hereinafter referred to as respondents, brought an action against defendant, Idaho Power Company, hereinafter referred to as appellant, seeking to recover damages for the death of Gerald H. Probart which resulted by reason of the boom of a crane operated by a fellow employee of Partner's Structural Steel Company contacting a high tension electric wire of appellant.

At the time decedent, the crane operator and another fellow employee were engaged in moving a steel beam, 35 feet in length, from one side of a building then under construction onto Balsam Street and underneath the transmission line of appellant company thence onto Pole Line Road in Pocatello, Idaho, thence north to the front portion of the building for location. Decedent was engaged in steadying one end of the beam at the time the boom contacted the wire.

Idaho Compensation Company was made a party defendant. It was insurance carrier of Partner's Structural Steel Company, the employer of deceased, under the Workmen's Compensation Law. Idaho Compensation Company admitted liability for payment of compensation and the Industrial Accident Board made awards thereof pursuant to such admitted liability. It asserted subrogated rights of recovery of the entire amount of the benefit payments it made and the present worth of all future payments it obligated itself to make.

The jury returned a verdict and judgment was entered for respondents for the sum of $50,200.

The payments made by Idaho Compensation Company and those it obligated itself to pay aggregated $14,521.89. The trial court entered judgment in its favor only for $5,356.49, which represented the amount it paid plus the present worth of all future payments computed at 4% compounded annually, less 50% of such latter amount allowed as attorney fees payable to the attorneys for respondents.

Idaho Compensation Company cross-appealed from said judgment, contending that if the judgment below for respondent be upheld, then under its subrogation rights it would be entitled to have judgment for what it had already paid and the present value of any portion of the award to be paid in the future computed at 2% compounded annually, without deduction of any sum as attorney fees for the services of respondents' attorneys. Respondents by agreement with their attorneys had agreed to pay as attorney fees 50% of any recovery made.

From the order and judgment, Idaho Power Company appealed. Idaho Compensation Company also cross-appealed from that portion of the judgment awarding any attorneys fees out of the recovery of Idaho Compensation Company under its rights of subrogation and in computing the present worth of future payments at 4% compounded annually rather than at 2%.

The appellant has made some 29 assignments of error, many of which are iterrelated and overlapping, therein urging among other things that there was an entire failure of proof of actionable negligence on the part of appellant; that the proximate cause of the injury and resultant death was due to the direct intervening negligence of the operator of the crane and also that the deceased was contributorily negligent as a matter of law; that the trial court erred in admittance of certain evidence over objection and in giving certain instructions and in refusing to give several requested instructions.

We will first consider those assignments of error which challenge the sufficiency of the evidence as a matter of law, to establish any actionable negligence on the part of appellant.

The alleged and asserted acts of negligence upon which the respondent relied for recovery of damages were based generally on the proposition that appellant was guilty of negligence in failing to have its lines a sufficient distance above the ground over and across Balsam Street at its intersection with and along Pole Line Road, particularly under the changed conditions then existing, so as to afford proper protection to people entitled to use such street and road and to permit the free passage of cranes and derricks traveling along the same in the vicinity of such intersection in transporting building materials and other objects along and upon said streets and roads without making contact therewith; upon the same grounds and for the same reasons the respondents assert and allege and contend that the appellant was also negligent in failing to insulate such transmission lines.

The appellant constructed and maintained an uninsulated high voltage transmission line over and along Pole Line Road which intersects Balsam Street. It was constructed for the purpose of and it did carry 12,500 volts between phases or 7200 volts to ground. It was no less than 21 feet, 9

inches above the ground at the area of the accident.

There was ample clearance for the crane in moving the beam to its intended location, without lifting the boom to a height that it contact the line.

In recent years and some time after the line was constructed, the area where the accident occurred experienced marked development industrially and as an urban residential district.

For several years immediately preceding the accident it was the common practice of many workers and operators of cranes and derricks in Pocatello and vicinity to use the streets and highways thereon for the transportation and movement of such machinery which was employed quite generally in construction work; while transporting such machinery along the streets and highways it was a general practice to lower the boom; many of the cranes so used were much higher than the one involved in the accident; two of them in the past had contacted an electric transmission line but on each occasion without injury or damage; no report of such experience was made and the company had no knowledge thereof.

The appellant had no actual knowledge that the particular building was under construction or any knowledge that there was any necessity for or the operation of the crane at the particular time and place.

The appellant urges that it constructed and maintains its line in accordance with accepted and sound practices and at such a distance from the ground so as to admit the lawful use of such streets and roads for all usual, common and ordinary purposes without danger and that it had met all reasonable standards of due care and duty enjoined upon it as a matter of law in these respects.

The United States Department of Commerce, National Bureau of Standards, adopted a set of safety rules, relative to the installation and maintenance of electric transmission lines, being Handbook H-32.

The trial court refused to receive the entire handbook in evidence although it allowed portions thereof to be admitted. The handbook provides for a minimum vertical clearance of 20 feet above the ground with reference to electric transmission lines carrying not less than 750 nor more than 15,000 volts, in areas such as that where the accident occurred, if the wires pass over a public street, alley or road.

The Public Utilities Commission of Idaho, pursuant to legislative authority, is empowered to require every public utility to maintain and operate its lines in such a manner as to promote and safeguard the safety of the public and to this end empowered to prescribe certain reasonable standards of installation, use, maintenance and operation thereof. Sec. 61–515, I.C.

The Public Utilities Commission pursuant to such authority, by Order No. 72 of June 25, 1943, and supplemental order No. 81,

entered January 7, 1949, adopted the 5th edition of the National Electric Safety Code, Handbook H-32, as a proper and reasonable standard for the installation and maintenance of electrical supply and communication lines.

It is the duty of and the supreme court will take judicial notice of an order of the Public Utilities Commission adopted in accordance with and pursuant to statutory authority. State v. Taylor, 58 Idaho 656, 78 P.2d 125; Bunten v. Eastern Minnesota Power Co., 178 Minn. 604, 228 N.W. 332; Nicolai v. Wisconsin Power & Light Co., 227 Wis. 83, 277 N.W. 674; Verbeten v. Huettl, 253 Wis. 510, 34 N.W.2d 803.

It is admitted and there is no contention otherwise that the highest degree of care must be exercised by those engaged in the generation and transmission of electric energy. Chase v. Washington Water Power Co., 62 Idaho 298, 111 P.2d 872. It is urged by the appellant that it met this standard of care and that the evidence fails as a matter of law to establish negligence on its part.

The duty to insulate is not an absolute duty. However, the exercise of due care requires an electric company to insulate all wires carefully and properly where there is reasonable probability of human contact therewith or, in the alternative, such wires must be located so as to be comparatively speaking, harmless; if the company maintains its wires at such height above the ground that there is no reason to anticipate or probability that people using the highways or the area over which the wires are suspended will come in contact with them, insulation is not required. Trimyer v. Norfolk Tallow Co., 192 Va. 776, 66 S.E.2d 441; Croxton v. Duke Power Co., 4 Cir., 181 F.2d 306; 29 C.J.S., Electricity, § 44, p. 589.

Where a safety code is adopted by the state and constitutes a guide for electric companies, the construction and maintenance of a line in accordance with such code, constitutes prima facie evidence of the absence of negligence. Douglas v. Maloney, 105 Cal.App.2d 284, 233 P.2d 59 at page 61; Lozano v. Pacific Gas & Electric Co., 70 Cal.App.2d 415, 161 P.2d 74 at page 79; Arkansas Power & Light Co. v. Prince, 215 Ark. 182, 219 S.W.2d 766; Southwestern Gas & Electric Co. v. Deshazo, 199 Ark. 1078, 138 S.W.2d 397; Welsh v. Gulf States Utilities Co., La.App., 32 So.2d 723; Smith v. Iowa Public Service Co., Iowa, 6 N.W.2d 123; Oklahoma Gas & Electric Co. v. Wilson, 172 Okl. 540, 45 P. 2d 750, 752; Hauser v. Pacific Gas & Elec. Co., 133 Cal.App. 222, 23 P.2d 1068; Hayden v. Paramount Productions, Inc., Cal., 91 P.2d 231, 232; Webb v. Louisiana Power & Light Co., La.App., 199 So. 451; West Texas Utilities Co. v. Dunlap, Tex.Civ. App., 175 S.W.2d 749; Boudreaux v. Louisiana Power & Light Co., 16 La.App. 664, 135 So. 90.

Conversely, the failure on the part of an electric company to observe the minimum requirements of such an order constitutes negligence per se. Howell v. San Joaquin Light & Power Corp., 87 Cal.App. 44, 261 P. 1107.

On the record, the company fully complied with both the National Safety Code and the order of the Public Utilities Commission. This showing establishes a prima facie case of the absence of negligence on its part. In order for the respondents to prevail, they must go farther and prove some actionable negligence on the part of the company. In this respect the only further evidence submitted related to the building activity generally throughout Pocatello and vicinity; that in recent years many building contractors had resorted to the use of cranes and derricks of various sizes and heights and that such machinery had been operated over and along the streets and highways and used in the construction of various buildings. Such contractors in the movement of their machines over and along the streets and highways always lowered the boom except when such machinery was used to move material and that when so used, with two exceptions, no contact with the wires of the company was had; on the two occasions contact was made no injury or damage resulted and no report was ever made to the company and it did not otherwise have knowledge of such instances; this is the only additional evidence in the record which it is asserted constitutes active negligence on the part of the company because it failed to anticipate and meet the particular hazard even though it had met the minimum standards of due care with reference to the construction and maintenance of such lines by compliance with the requirements of the order of the Public Utilities Commission in every respect.

The burden was on respondents to show the negligent character of the failure to either insulate the wires or to place them at a greater height; neither the failure to insulate nor to place such wires at a height in excess of 20 feet warrants a presumption or an inference of negligence; unless there is a showing of negligence in some other respect, no issue of negligence is raised; there is no evidence in the record that would show that it was practical generally to insulate the high tension line or that if it were done any greater measure of safety would have resulted where such lines had a clearance from the ground in excess of 21 feet. Viewed in its most favorable light, the evidence adduced with respect to this matter would indicate that it would be possible to insulate the wires where this injury occurred and that perhaps if this had been done the injury would not have taken place unless the boom in striking the wires broke through the insulation; however, in the absence of knowledge of any special conditions which arose and which were created by construction of the particular building, such a test would be of

no value; where the company had no knowledge of the special circumstances which may or may not give rise to the duty to insulate any particular area or raise the line to a greater height (and to what height we do not know), the duty, if any existed, would necessarily extend to all the lines of the company. Where the evidence fails to show that appellant knew of the building operations, then in order to show negligence in failing to insulate or to place the wires at a greater height, or to do both, the duty and burden would be upon the respondents to show that it was practical and safer to insulate appellant's high tension lines generally even though they were strung on poles in excess of 21 feet above the ground. West Texas U. Co. v. Dunlap, Tex.Civ.App., 175 S.W.2d 749. This was not shown.

Where an electric company has met the minimum requirements of safety in the construction and maintenance of its high tension line as provided by law, as in this case, thereby furnishing under ordinary circumstances, reasonable margins of safety, it has thereby met the minimum standards of care to be taken and exercised in those respects and one who asserts defects such as would make the construction or the maintenance of such line dangerous must necessarily assume the burden of proving the particular activities or conditions that constitute the negligence complained of. Southwestern Gas & Electric Co. v. Deshazo, 199 Ark. 1078, 138 S.W.2d 397. Respondent has not carried this burden.

 It is further urged by the respondents that even though the company had met the minimum requirements for the construction and maintenance of an uninsulated line, it was nevertheless liable because of changed conditions due to the industrial development and the expanded uses of cranes and derricks both for the movement upon streets and roads and for construction of buildings located contiguous to streets and thus it could reasonably anticipate the danger and be charged with negligence in its failure to take additional precautions. In other words, it is urged that the company was bound by constructive knowledge of the dangerous condition which existed and which would necessarily be occasioned under such conditions; the evidence as adduced in this case does not afford any basis for imputing to the company notice of the danger created by such use of such cranes and derricks; before knowledge of a defect or other condition can be constructively imputed, the condition or situation must have not only existed and continued for such length of time as to be discovered but, more than this, there must be such a situation or condition which is capable of being ascertained upon inspection and observation or supervision legally required of the party who is to be bound by such knowledge; in this instance,

the presence of the crane in the locality of the high tension wires was temporary and not permanent.

Where a power company which is engaged in the transmission of high voltage electricity, by overhead uninsulated wires running along the sides of a roadway or street, constructs such line in compliance with law and in such manner that the roadway or street is safe for all usual and ordinary uses, it cannot be held guilty of negligence for failure to anticipate that persons operating cranes and derricks upon such highways and streets for the purpose of transporting and placing a beam or truss in position on some building adjacent thereto, may raise the same to a height unsafe for such operations and thus bring it close to or in contact with such overhead wire. Under such conditions the law only requires the company to reasonably guard against probabilities, not possibilities. Hauser v. Pacific Gas & Elec. Co., 133 Cal. App. 222, 23 P.2d 1068; Oklahoma Gas & Electric Co. v. Wilson, 172 Okl. 540, 45 P.2d 750; Webb v. La. Power & Light Co., La.App., 199 So. 451; Le Vonas v. Acme Paper Board Co., 184 Md. 16, 40 A.2d 43.

Although the company fully complied with the safety orders of the Public Utilities Commission, it does not necessarily follow that it exercised that degree of care required under all the circumstances, thereby absolving it from negligence; it does not mean that it met its full duty to the public; it only relieves it of the charge of negligence per se; it can only be excused, if its acts and conduct were consistent with the due care required under all the facts and circumstances. Lozano v. Pacific Gas & Electric Co., supra; Douglas v. Maloney, supra.

While the company did not insulate it complied with the other alternative, by placing the wires beyond the danger line of contact with human beings, under usual and ordinary conditions; it could not have reasonably anticipated the danger, resultant injury and death.

█ Under all the facts and circumstances, the evidence, as a matter of law, fails to show negligence on the ground that the line was not insulated or constructed at a greater height.

Because of the conclusion hereinabove reached, it is not necessary to, and we do not consider any other errors assigned by appellant; neither is it necessary to, nor do we consider the errors assigned by cross-appellant.

The judgment is reversed with directions to vacate the same and to dismiss the action. Costs awarded to appellant.

PORTER, C. J., and GIVENS and TAYLOR, JJ., concur.

On the original hearing, KEETON, J., sat but did not participate in the decision; on rehearing, THATCHER, D. J., sat in place of KEETON, J.

THATCHER, District Judge (dissenting).

The majority in this case hold that there was not enough evidence of negligence upon the part of the Power Company to permit the case to go to the jury. The case should go to the jury unless as a matter of law no recovery could be had upon any view which properly could be taken of the evidence. Evans v. Davidson, 58 Idaho 600, 77 P.2d 661. " 'Where on undisputed facts reasonable and fair-minded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, the question of negligence is one of fact to be submitted to the jury.' " Call v. City of Burley, 57 Idaho 58, 62 P.2d 101, 105; Byington v. Horton, 61 Idaho 389, 102 P.2d 652.

As stated in the majority opinion, compliance by the Power Company with the Safety Code constituted prima facie evidence of the absence of negligence, and the burden was upon respondent to prove some actionable negligence upon the part of the Power Company. The proof submitted was that in recent years (since the construction of the power line) building activity throughout Pocatello and vicinity had greatly increased; that the area in which contact with the wire occurred had been built up extensively for residence and industrial uses, and in fact had ceased to be rural and had become urban; that the use of cranes of various sizes and heights for use in building construction had become a common practice; that these were used along, over and adjacent to the streets and alleys of the City and its environs in the course of ordinary every-day activity of the people of the community; that in the movement of cranes over and along the streets and highways the booms were kept lowered and no contacts with power lines had occurred under such conditions; that upon at least two occasions, when the cranes were being used to move materials, contact had occurred between such cranes and lines of the Power Company; one expert witness testified that in his opinion the wires should have been insulated; two others testified to the contrary; that the Power Company had no actual notice of these two contacts, nor of the particular use to which the crane involved in this case was being put at the time of the contact; that the company did have such constructive notice of the building activity throughout Pocatello and vicinity, the change from rural to urban nature of the area in question, the increased use of cranes in construction, and the travel thereof over the City streets and highways, and of contacts with its wires, as reasonably may be imputed to it by reason of its being the sole utility supplying electric power in Pocatello and vicinity, and as may be imputed to it from the exercise of the duty it owed to inspect its lines and keep them in safe condition.

With the foregoing facts before it, the jury would normally be instructed in regard

to negligence as it pertains to the Power Company. The majority opinion reiterates the rule laid down in Chase v. Washington Water Power Co., 62 Idaho 298, 111 P.2d 872, that the highest degree of care must be exercised by those engaged in the generation and distribution of electricity. This would be a fair instruction to give to the jury. The following, also taken from the majority opinion would seem to be a fair instruction: "The duty to insulate is not an absolute duty. However, the exercise of due care requires an electric company to insulate all wires carefully and properly where there is reasonable probability of human contact therewith or, in the alternative, such wires must be located so as to be comparatively speaking, harmless; if the company maintains its wires at such height above the ground that there is no reason to anticipate or probability that people using the highways or the area over which the wires are suspended will come in contact with them, insulation is not required".

Also the following: Compliance with a statute or a code does not relieve one from the duty of exercising ordinary care under the circumstances.

Likewise the following, one of the jury instructions approved by this Court, would also seem to be appropriate: "Negligence may be defined to be the omission or want of ordinary care; and ordinary care is such care as an ordinarily prudent person would exercise under like circumstances.

Negligence may consist in the failure to do that which an ordinarily prudent person would do under the circumstances, or the doing of that which an ordinarily prudent person would not do under the circumstances. The care to be exercised to be ordinary care must be proportioned to the danger reasonably to be apprehended from the circumstances. What might be ordinary care under certain circumstances would be negligence under other circumstances. The standard by which ordinary care is gauged is the question: 'What would an ordinarily prudent person have done under like circumstances?'. If a person acted as an ordinarily prudent person would act under the same circumstances and conditions, there is no negligence. If a person failed to act as an ordinarily prudent person would have acted under the same or like circumstances and conditions, then there is negligence".

Having received these instructions, it becomes the duty of the jury, who are the "reasonable and fair-minded men" who must determine the question of negligence or non-negligence, to consider the facts in the light of the instructions and try to reach an agreement.

As an aid to the jury in the performance of their duties, counsel might well argue, in the words of the instruction, that "what might be ordinary care under certain circumstances would be negligence under other circumstances"; that what might be ordinary care in a rural area might be negli-

gence in an urban area; that it might not be ordinary care, for instance, for the Power Company to maintain its uninsulated wires at a height of only twenty feet above the ground (as permitted by the Code) in downtown Pocatello, while it might be ordinary care for the Company to maintain its wires at such height at the intersection of Balsam and Pole-Line Roads (likewise permitted by the Code); that it might be negligence to maintain said wires at such height at the junction of Balsam and Pole-Line Roads, while it might not be negligence to maintain the wires at the height along a country lane; that maintenance of the wires at a given height, allowed by the Code, might be ordinary care where few cranes are used in building construction, and yet be negligence where many cranes are used; that the increase of population, resulting in the increased use of the streets, might alone be such a change in conditions that what was ordinary care before, now becomes negligence.

Counsel might also argue to the jury that if there occur a great increase in the use of the streets and in the congestion of buildings, both residential and industrial, in a rural area, a reasonable man might take such factors into consideration in determining whether contact between an electric wire and the boom of a crane might not be a reasonable probability, whereas such contact in open country might be considered no probability, but merely a possibility; that the fact that two cranes had come in contact with power lines in Pocatello in recent years might be considered by the jury as taking such occurrence from the realm of possibility into the realm of probability. Counsel might well argue that contact between the boom of a crane and a Power Company wire can as readily be foreseen as could the contact between two hawks fighting in the air over the Power Company's lines, as occurred in the case of Chase v. Washington Water Power Co., supra.

Yet the majority of this Court would have the trial Judge say to the parties, in effect, that contact between a crane and a wire under the circumstances in evidence before the jury could not reasonably be foreseen and that fair-minded men could not reasonably differ on that question; or, in effect, say to the parties that even though such event could reasonably be foreseen by fair-minded men, yet, as a matter of law, there was no negligence because the Power Company had complied with the Safety Code. How, one might ask, could the trial Judge make such statement in the light of the conflicting opinions of the expert witnesses alone? Could the trial Court or this Court say that the experts were not fair-minded, reasonable men?

For the foregoing reasons I must dissent.