*supra,* was an appeal from the Probate Court and dealt with an alleged concealment of assets, which is completely different from the facts in the present case and hence involves no conflict.

This branch further refers to *Ricketts* v. *Hahn,* 72 Ohio App., 478, 53 N. E. (2d), 202. It is plain that in the *Ricketts case, supra,* there was an effort by plaintiff to get around the one-year statute of limitation applicable to malicious prosecution actions. Plaintiff in that case attempted to call his claim an action in fraud and deceit for which the statutory limitation was four years. The entire proceeding upon which the action was founded grew out of the alleged wrongful appointment of a guardian for plaintiff and the alleged wrongful claim that the plaintiff had a legal settlement within the county and lacked the mental capacity to carry on his own business. The facts in the *Ricketts case, supra,* differ materially and in many respects from the case now before the court, and there is, accordingly, no basis for determining there is a conflict in judgments.

For the reasons above set forth the motion to certify, and each branch thereof, must be, and hereby are, overruled.

*Motion overruled.*

Petree, P. J., Bryant and Miller, JJ., concur.

Beauchamp et al., Appellees, *v.* B. & L. Motor Freight, Inc., Appellant.

Paulson et al., Appellees, *v.* B. & L. Motor Freight, Inc., Appellant.

Nationwide Mutual Insurance Co., Appellee, *v.* McCoy, Appellee; B. & L. Motor Freight, Inc., Appellant.

(Nos. 8397, 8398 and 8399—Decided April 28, 1958.)

*Mr. Edward J. Utz,* for plaintiff-appellees Frank Beauchamp and Nationwide Mutual Insurance Company and defendant-appellee Howard Roscoe McCoy.

*Mr. Robert G. McIntosh* and *Mr. Louis E. Dietz,* for plaintiff-appellees Frances Paulson and The Buckeye Union Casualty Company.

*Messrs. Bloom & Tyler,* for defendant-appellant.

MATTHEWS, J.  The defendant B. & L. Motor Freight, Inc., appellant herein and hereinafter referred to as defendant, owned and was operating a tractor-trailer in its business of a carrier of freight at the time of a collision between it and an automobile owned by plaintiff Paulson, appellee herein and

hereinafter referred to as Paulson, on Wright or Lockland Highway near its intersection with state routes Nos. 50 and 126. On this occasion, the journey started at Newark, Ohio, and the place of destination was Hamilton, Ohio. On reaching Washington Court House, which, it seems, was about the middle point of the journey, the driver stopped at a restaurant for breakfast, and, on making a routine inspection of the automotive equipment, discovered that the bracket holding a copper hose, through which the compressed air passed from the compressor to the breaking equipment, had broken, allowing the hose to dangle, and that the hose itself was partially broken, creating a leak, through which air was passing, causing a hissing sound and reducing the efficacy of the compressed air brakes. On making this discovery, the defendant's employee detached the tractor from the trailer and retraced his route a mile or so to the nearest automobile repair shop, and, after pointing out the parts requiring repairs, left the tractor and went elsewhere, and did not return until after the repairman had finished his task.

It does not appear that the defendant's employee made any investigation as to the skill or reliability of the mechanic, and apparently he was selected solely because he was nearest. Nor does it appear that the defendant's employee had the skill necessary to determine whether the defect had been properly mended. It does appear that he relied solely on the mechanic to do the repairing in a skillful manner.

The defendant's employee returned to the repair shop after the repairs had been made. He looked at, but did not touch the parts repaired, noticed that a rubber tube had been substituted for the leaking copper hose, and proceeded in the tractor to the restaurant where he had left the trailer. He then connected the trailer to the tractor, applied the brakes to determine whether they operated properly, and, finding that they did, proceeded on his way to Hamilton, Ohio, without mishap, where he delivered his freight, and, on instructions, proceeded to Lockland, Ohio, to take on another load. Having taken on a load weighing from ten to twelve tons, he was proceeding on Lockland Avenue when this incident, out of which these law suits arose, occurred.

As the driver of defendant's tractor approached the intersection of state routes Nos. 50 and 126 with Lockland High-

way, he found himself ninth in the flow of traffic that had been stopped by a traffic light. He was about one hundred to one hundred and twenty-five feet behind the automobile immediately in front of him. When the line of automobiles in front of him started to move forward on the change of the traffic light, he also started and reached a speed of from ten to fifteen miles per hour, when, to regulate his speed with that of the automobile in front of him he attempted to apply the air brake and found that it did not function and that he could not reduce the speed with it. He then tried the emergency brake, and, while it had some effect, the effect was not enough to prevent a collision. Because of surrounding conditions, he had no alternative to proceeding forward, and the tractor struck the rear of the automobile immediately in front, damaging it and the other plaintiffs' automobiles which were in the line in front.

These actions are by the owners or their indemnitors to recover for damages to their respective automobiles. The actions were joined for the trial, at which the facts as outlined were developed. Perhaps it should also be said that the evidence showed that, on the trip from Washington Court House to Hamilton and from there to Lockland, the driver made the usual inspection of the equipment, on many occasions applied the brakes, and had no warning that any part would fail to operate as intended. However, it also appeared that, in making the repairs at Washington Court House, the mechanic, in addition to substituting a rubber for a copper hose, also used a brass screw to insert in a steel pipe in making a coupling. It also appeared that brass is a softer material than steel, and that, after the accident, it was disclosed that the threads on the brass screw were stripped or worn smooth so that the vibration of the tractor caused the joint to loosen and eventually come apart, releasing the air and preventing compression, which was the cause of the failure of the air brake.

The trial court held for the plaintiffs, and these appeals are from those judgments.

It is the contention of the defendant that the evidence fails to show any negligence on its part, and that, therefore, the judgments should be reversed and final judgment entered for it.

Of course, it is a rule of law and reason that no inference

of negligence can be drawn from the mere fact that the plaintiffs' automobiles were damaged. No such inference can be drawn from the collision itself. Mere naked evidence of a collision would be sterile as proof, but when there is in addition evidence of surrounding circumstances, a different situation is presented, as in this case.

It is undisputed that the defendant, through its employee, had complete and exclusive control of the tractor-trailer, and that it overtook and crashed into the rear of Paulson's automobile while it was proceeding in a careful manner along a public highway. Now, such an occurrence would not ordinarily take place in the absence of carelessness in some respect, and, therefore, an inference of negligence on the part of the driver arises, according to the overwhelming weight of the decisions. The only divergence relates to whether the effect of the evidence is to create a presumption of law or an inference of fact. There is some difference as to whether the doctrine of *res ipsa loquitur* applies, but this difference results from a difference in the meaning of that phrase. In those states where the doctrine creates a presumption of law it is held that the collision of an overtaking vehicle with the rear of an overtaken vehicle is circumstantial evidence of negligence on the part of the former. However, in Ohio, the distinction is immaterial. In *Fink* v. *New York Central Rd. Co.*, 144 Ohio St., 1, 56 N. E. (2d), 456, the court held, as stated in the second paragraph of the syllabus:

"In Ohio the rule of *res ipsa loquitur* is not a rule of substantive law but is a rule of evidence which permits the jury, *but not the court in a jury trial,* to draw an *inference* of negligence where the instrumentality causing the injury was under the exclusive management and control of the defendant and the accident occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. (*Glowacki, a Minor,* v. *North Western Ohio Ry. & Power Co.*, 116 Ohio St., 451, approved and followed.)"

The defendant recognized that the situation required, or at least made advisable, an explanation on its part. Accordingly, it offered testimony to show that the failure of the air brakes to function was caused by the separation of a joint in the conduit of the air leading from the compressor to the braking

equipment, allowing the air to escape and preventing compression, and that this separation of the joint resulted from the threads on the brass screw failing to hold it in place.

As the joint was tight enough to prevent air from escaping on the trip from Washington Court House to Lockland Avenue, it would seem reasonable to infer that the vibration of the tractor caused the loosening of the joint. But this was the coupling that had failed in Washington Court House on this trip. It was there that the brass portion with the threads was used to repair the joint.

This created an issue of fact to be determined by the trier of the facts. The third paragraph of the syllabus of *Fink* v. *New York Central Rd. Co., supra* (144 Ohio St., 1), seems to be clearly applicable:

"The trial court, in a jury trial, in a case which calls for the application of the rule of *res ipsa loquitur,* is without authority to declare, as a matter of law, that the inference of negligence which the jury is permitted to draw, had been rebutted or destroyed by an explanation of the circumstances offered by the defendant, and such action on the part of the trial court is an invasion of the province of the jury."

The cases are unanimous in holding that a rear-end collision between an overtaking vehicle and an overtaken vehicle is some evidence of negligence on the part of the driver of the overtaking vehicle. It is unimportant whether this results from the application of the doctrine of *res ipsa loquitur* in such states as Ohio, where the doctrine is simply a rule of evidence, and not a rule of substantive law.

There is no evidence that any care was used in the selection of the mechanic and no inspection to ascertain whether the work had been properly done or the proper materials used. The only test made was that of applying the brakes to find out whether the air brakes would function, not whether they were sufficient to withstand the vibration of the trip, or their durability in any respect.

It is our opinion that this evidence raised an issue of fact as to whether the defendant had exercised reasonable care in selecting the mechanic and in inspecting the work.

The defendant's tractor-trailer weighed from six to eight

tons and was constructed to carry a load greater than its weight. At the time of this collision the load weighed more than the weight of the tractor-trailer. It was intended for use as a carrier of freight over and upon the public highways. Such a vehicle must be recognized as inherently and imminently dangerous for its intended use unless equipped with means of control. The duty of exercising reasonable care in the repair of such an instrumentality cannot be delegated by the user. The negligence of an independent contractor to whom the task of repairing has been assigned is attributable to the contractee. It is the defendant's default in the performance of a nondelegable duty.

In II Restatement of the Law of Torts, 1145, Section 425, the rule on this subject is stated as follows:

"One who employs an independent contractor to maintain in safe condition (a) land which he holds open to the entry of the public as his place of business, or (b) a chattel which he supplies for others to use for his business purposes or which he leases for immediate use, is subject to the same liability for bodily harm caused by the contractor's negligent failure to maintain the land or chattel in reasonably safe condition, as though he had retained its maintenance in his own hands."

On page 1146 therein, this application of the rule is stated:

"A operates a 'drive-yourself' automobile business. He sends his cars for repair to the repair shop of B. Through the negligence of B's mechanic the breaks [brakes] on a car which A lets to C are dangerously defective, although this could not have been discovered by an inspection which it would be reasonable to require A to make before letting the car. Owing to the defective brakes C is unable to stop the car in time to avoid running into a ditch. A is subject to liability to C and D, a friend of C, whom C is taking for a pleasure drive in the car."

It would seem that the hypothesis just stated is found in all essentials in the facts in this case.

We, therefore, hold that, under the circumstances of this case, it was in the province of the trier of the facts to draw an inference of negligence from the collision itself; that the action of the mechanic who repaired the brakes is attributable to the defendant; and that a reasonable inference, that the repairing

was unskillfully and negligently done, could be drawn; that there was evidence of negligence of the driver in selection of the mechanic without inquiring as to his ability, skill, and trustworthiness; and that the driver was also negligent in failing to properly inspect the brakes to determine whether they would stand the stress to which they would be, or might be, subjected on the journey.

It is our conclusion that the finding in favor of the plaintiffs is supported by substantial evidence, and is not manifestly against the weight of the evidence.

For these reasons, the judgments are affirmed.

*Judgments affirmed.*

HILDEBRANT, P. J., and DOYLE, J., concur.

DOYLE, J., of the Ninth Appellate District, sitting by designation in the First Appellate District.