JOHN G. RUTZ, DOING BUSINESS AS STAR BUS LINE,

*Appellant*

(Defendant below)

AND

MARVIN B. SMITH,

*Defendant,*

vs.

ORVILLE W. ANDERSON,

*Appellee*

(Plaintiff below)

JOHN G. RUTZ, DOING BUSINESS AS STAR BUS LINE,

*Appellant*

(Defendant below)

AND

MARVIN B. SMITH,

*Defendant,*

vs.

HELEN M. WILSON,

*Appellee*

(Plaintiff below)

(Nos. 2851 and 2852; January 27th, 1959; 334 Pac. (2d) 496)

For the appellant the causes were submitted upon the brief of Greenwood, Ferrall and Bloomfield of

Cheyenne, Wyoming, and oral argument by C. N. Bloomfield, Jr.

For the appellees the causes were submitted upon the brief and also oral argument of Stanley K. Hathaway of Torrington, Wyoming.

Before Blume, C. J., and Parker and Harnsberger, JJ.

## OPINION

Mr. Chief Justice Blume delivered the opinion of the court.

This appeal involves two consolidated actions in one of which Helen M. Wilson was plaintiff and in the other of which Orville W. Anderson was plaintiff. The defendants sued by plaintiffs are John G. Rutz,

doing business as Star Bus Line, owner of the bus involved herein, and Marvin B. Smith, driver of the bus. In both actions plaintiffs sought damages on account of injuries suffered by reason of the bus of John Rutz colliding with a Ford automobile in which Helen M. Wilson was riding. There is comparatively little dispute as to the manner in which the collision occurred. It occurred on June 16, 1956, in the intersection of Highway 26 running east and west and Highway 85 running north and south in the town of Torrington, Wyoming. There was a sign for vehicles coming from the east to stop when entering Highway 85. The Ford automobile was being driven north at about fifteen miles per hour. The bus came from the east on Highway 26, did not stop at the intersection, turned north on Highway 85 and struck the Ford automobile with considerable force when it was about nineteen feet north of the north line of Highway 26. The driver of the Ford automobile lost control of it by reason of the collision. It was swerved toward the northwest, over the curb and sidewalk and into a pole. At that time the plaintiff, Orville W. Anderson, was walking southward along this sidewalk, was struck by the automobile, was knocked unconscious and was severely injured. Helen M. Wilson also was injured due to the collision. There is no contention that either of the plaintiffs was guilty of any want of care.

The plaintiffs, setting forth substantially the facts above mentioned, allege that the collision occurred by reason of the negligence of the defendants in the following particulars: (1) In operating the bus at an unlawful, excessive and dangerous speed under the conditions then and there existing; (2) In failing to have the bus under proper and adequate control; (3) In failing to stop the bus as required by law before entering the intersection of Highway 26 and Highway

85, the latter being the same as South Main Street in the town of Torrington; (4) In failing to yield the right-of-way to the vehicle lawfully traveling upon and through the street or highway; (5) In operating the bus when the emergency brake and speedometer were known to be inoperative; (6) In operating the bus when it was not equipped with brakes adequate to safely control its movement, when its brakes were not in good and safe working order and when they did not comply with the requirements of the statutes of this state.

The defendants in their answer denied any negligence on their part and pleaded as a separate defense that the collision was an unavoidable accident; that the bus at the time and place above mentioned was being operated by Marvin B. Smith in a safe and careful manner; that as the bus approached the above-mentioned intersection the brakes thereon suddenly became inoperative and, as a result thereof, Marvin B. Smith was unable to bring the bus to a stop at the intersection of the highways; that Smith, in view of the sudden emergency confronting him, did steer, control and manage said bus with all due care and skill in an attempt to avoid a collision with persons or property; and that, however, he was unable to avoid the collision with the Ford automobile above mentioned and then proceeded northerly on Highway 85.

The case was tried to a jury and they returned the following verdict:

"We, the jury, duly empanelled and sworn to try the above entitled causes, do find generally for the plaintiffs and against the Defendant John G. Rutz, but in favor of Defendant Marvin Smith, and fix the amount of plaintiffs damages as follows:

"Plaintiff Helen M. Wilson ............................$ 5,188.98

Plaintiff Orville W. Anderson ..................... 14,325.90"

Judgment was entered in accordance with the verdict and from that judgment the defendant John G. Rutz has appealed to this court.

The bus, which had traveled some three hundred thousand to four hundred thousand miles and weighed about seven or eight tons, had four gears. Smith, the driver, testified in substance as follows: He traveled at the rate of 50 miles an hour before entering the town of Torrington and slowed down to about 25 miles an hour when he entered the town. About a block and a half before entering Highway 85 he put his foot on the air brake which, as above mentioned, failed to respond. The driver then geared the bus down to third gear and entered Highway 85 when traveling at about 15 miles an hour. There is a good deal of testimony to the effect that it was not possible for him to have put the bus in second gear when traveling at that rate of speed. The momentum of the bus carried it into the intersection where the collision occurred and some 450 feet further north before the bus was brought to a stop. In other words, it appears that from the time that the driver discovered that the foot brake did not work he traveled some 900 feet before he was able to bring the bus to a stop.

As before indicated, the jury found in favor of the defendant, Marvin B. Smith. In other words they, theoretically at least, found that he was not negligent. So it is contended by the appellant herein that any recovery herein must be based on the negligence of the owner of the bus as distinguished from any negligence of the driver. In the case of Willy v. Atchison,

T. & S. F. Ry. Co., 115 Colo. 306, 172 P.2d 958, 965, it is stated:

"* * * It is a general legal principle, and so held in most jurisdictions, that where the employer and his employee are sued jointly in an action based solely on the tortious conduct of the employee and the finding is in favor of the employee, there can be no recovery against the employer. Similarly it has been held that a verdict against the employer and one in favor of the employee is equivalent to a finding that no cause of action exists and, consequently, there can be no judgment against the employer.* * *"

In 9 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., 1955, p. 369, it is said:

"Where a master's liability for the negligence of his servant rests upon the doctrine of respondeat superior, in those jurisdictions where the master cannot be held liable unless the servant is also liable, a verdict discharging the servant but holding the master for the liability is inconsistent.* * *"

We need not determine whether or not that is a proper rule of law, but if it is, it is quite apparent that it is not always safe to make the driver of a motor vehicle a co-defendant with the owner thereof as has been quite customary in this state. The rule so mentioned does not apply where the master himself was guilty of negligence. 9 Blashfield, supra, at pp. 369, 370. So we shall turn to the question as to whether or not John G. Rutz, the owner of the bus, can be held liable herein by reason of negligence attributable to him.

Marvin B. Smith, the driver of the bus, testified when he was called for cross-examination in part as follows:

"Q. Can you tell me, Mr. Smith, whether or not the emergency brake was functioning on the bus? A. No.

"Q. It wasn't? A. No.

\* \* \*

"Q. Was the speedometer operating on the bus on the day of the accident? A. No.

"Q. How long had it been not working? A. I don't know.

\* \* \*

"Q. More than a week? A. Yes.

\* \* \*

"Q. How about the emergency brake, had it been more than a day since it worked? A. Yes.

\* \* \*

"Q. Had you reported to Mr. Rutz that emergency brake and speedometer were not functioning? A. Yes.

"Q. Had any repair been made thereafter? A. An order had been made.

\* \* \*

"Q. \* \* \* On June 16th were the brakes of the Star Bus Line connected by two different means so that if one failed another means would apply brake pressure on at least two wheels? A. No.

\* \* \*

"Q. It is true you did not have an accurate guage? A. Not on the bus.

\* \* \*

"Q. Did you try your emergency brake? A. No, sir."

John G. Rutz and his foreman, Pat Kane, denied they had any knowledge as to the fact that neither the

speedometer nor the emergency brake was in operative condition. But, of course, the jury had a right to accept the testimony of the driver of the bus in this connection.

It may be well at this point to consider the question of the foot brake. This brake was an air brake operated by a compressor system. A five-eighths-inch tubing connected with the system and next to the compressor broke and this was the reason that the air brake did not work. The bus had been thoroughly overhauled a few weeks prior to June 16, the date of the collision herein. The compressor itself was new and was installed on June 9 or 10, 1956. Pat Kane, the foreman, testified that he examined this brake on June 15, 1956, and that it was in first class condition. He further testified that the tubing above mentioned was not weakened but that the break was a clean break and that it was hit by something. How or by what it was hit or could have been hit is not explained nor was the tubing above mentioned introduced in evidence in the case or asked to be produced in evidence. No testimony in connection with the air brake was introduced in evidence by the plaintiffs herein, so that it would seem that we should probably consider the fact that the foot or air brake did not work or suddenly became inoperative was an unavoidable accident for which the owner of the bus could not be held responsible.

We shall, accordingly, proceed to consider the other matters involved herein and first consider the matter as to the speedometer. The driver testified that he was able to fairly estimate the speed of his bus, but after all it was an estimate only. He testified that he entered Highway 85 at a speed of about 15 miles an hour. Other witnesses testified that he was traveling too fast, and one witness testified that he was traveling

at the rate of 25 miles per hour when he entered the intersection above mentioned. If the latter is true, then the momentum of the bus was too great. The jury, we think, were entitled to find that the speed was greater than that estimated by the driver and that this was caused in the main by reason of the absence of an operating speedometer. Had the speed been less than that estimated by the driver by only a small amount, the collision in this case would not have occurred.

We shall next consider the matter as to the emergency brake. Smith, the driver; Rutz, the owner; Pat Kane, the foreman; and another witness consider the term "emergency brake" as a misnomer, contending that that brake was intended merely as one to be used when the bus had stopped. Some of these witnesses, however, admitted that the emergency brake might work for a few seconds but that afterwards it would be set on fire. However, the witness, C. R. Bryan, testified to the contrary:

"Q. In your opinion then if the emergency brake upon this bus would have been operative, would it have had a slowing effect? A. Continual pull or slowing down all the way until it caught on fire. They usually catch on fire within half a mile if you are going pretty fast.

\*    \*    \*

"Q. Do you know or were you testifying when you said these emergency brakes would have a slowing or driving effect for approximately half a mile, are you talking about the type applying to drive shaft or type applying to wheel drums? A. It depends on mechanical condition, either type will hold quite a while, I would say half a mile or more and in some cases I have seen them hold longer than that."

The jury were entitled to credit this witness.

In any event, § 60-733(a) (1), W.C.S. 1945 (1957 Cum. Pocket Supp.), reads as follows:

"Every motor vehicle, other than a motorcycle or motor-driven cycle when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels."

It is clear that according to this statute a foot or air brake on a bus is not sufficient to comply with this statute. There must in addition to that be what is usually called an emergency brake. The first case considering a situation similar to our statute is People v. Cicardo, 140 Misc. 332, 250 N.Y.S. 477, 478. In that case it appeared that the statute in New York required that: "Every motor vehicle, operated or driven upon the public highways of the state, shall be provided with adequate brakes * * * in good working order and sufficient to control such vehicle at all times when the same is in use." Vehicle and Traffic Law, McKinney's Consol. Laws C 71, § 15, Subd. 1. The court, commenting on that, stated as follows at 250 N.Y.S. 479, 480:

"The contention that as defendant's car was equipped with an adequate foot brake, he did not violate the statute because his emergency brake was not in good condition, is untenable. The statute reads: 'Brakes' plural, not 'brake' singular. If it were the intention of the Legislature to use the word 'brake' singular, it could very easily have said that every motor vehicle operated or driven upon the public highways of the state shall be provided with an adequate foot brake

(or an adequate emergency brake) in good working order and sufficient to control such vehicle at all times while in use. This the Legislature did not do, and in my opinion the statute means just what it says, that the brakes of the motor vehicle must be adequate, which means that both the foot brake and the emergency brake must be in good working order and sufficient to control the car at all times when in use.

\* &ast; &ast;

"&ast; &ast; &ast; The emergency brake (as the name implies) is for the purpose of bringing the car to a stop in a sudden or unexpected occurrence or condition, to be used in addition to the foot brake and also in case the foot brake should be out of order or unable to bring the car to a stop."

In Rochefort v. Teche Lines, Inc., La.App., 186 So. 751, the statute relating to brakes is identical with that in this state, and it would almost seem that the Wyoming statute was adopted from that in Louisiana. The court said in part at 186 So. 755:

"The Louisiana Statute requires that every motor vehicle shall be equipped with two separate means of applying the brakes 'each of which means shall be effective' and that the brakes shall be 'adequate to control the movement of and to stop and to hold such vehicle'. It seems to us too clear for argument that the Legislature intended that two separate brakes, both of which should be efficient and capable of stopping a car, should be part of the equipment of every motor vehicle, so that in case one brake, let us say the foot brake, should fail, the other brake, the hand or emergency brake, might control the car. &ast; &ast; &ast; To say that a brake which cannot stop a motor vehicle when running at the moderate rate of twenty-five miles per hour in less than three hundred and forty-two feet is 'adequate to control the movement of and to stop and to hold' it, is absurd on its face. The idea that the hand brake is only a parking brake is probably suggested by the fact that it is the only brake

which can be applied when the vehicle is stationary or parked, since it is equipped with a ratchet which maintains the equipment attached to the braking surface taut, whereas the foot brake is relaxed when not actually under pressure of the foot of the driver. But, however the idea may have originated, or whatever may be the custom of the manufacturers of busses, the statute is plain and finds most appropriate application to the present situation where a bus weighing between sixteen and twenty thousand pounds is operated on the city streets. The capacity of such a vehicle for damage to life and property is enormous and the necessity for its equipment with all practical means of control obvious."

A well-considered case on the subject is Prunty v. Vandenberg, 257 Wis. 469, 44 N.W.2d 246. That case indicates that the statute in Wisconsin is very similar in connection with brakes to the statute in this state. In that case it was contended that the emergency brake was used only for the purpose of parking a car, and it was further contended that an emergency brake could not stop a truck going at the rate of 35 miles an hour. The court in discussing the statute and the contentions made in that case stated as follows at 44 N.W.2d 252:

"These circumstances do not constitute any excuse for failure to comply with the plain and unequivocal terms of the statute which provides that every motor vehicle must be equipped with two sets of brakes, each of which shall be capable of stopping the vehicle under normal conditions within fifty feet when traveling at a speed of twenty miles per hour. It was negligence as a matter of law for Vandenberg to operate his truck without two complete independent braking systems, each of which was able to bring the truck to a stop and within the distance stated in the statute. Verbeten v. Huettl, 1948, 253 Wis. 510, 519, 34 N.W.2d 803; Rochefort v. Teche Lines, Inc., La.App. 1939, 186 So. 751, 755; People v. Cicardo, 1931, 140 Misc. 332, 250 N.Y.S. 477, 479.* * *"

See also as holding similarly Wilson v. Shumate, Mo., 296 S.W.2d 72; Paulson v. B. & L. Motor Freight, Inc., Ohio, 145 N.E.2d 364, affirmed Beauchamp v. B. & L. Motor Freight, Inc., Ohio, 152 N.E.2d 334; and see 60 C.J.S. Motor Vehicles § 261, p. 639.

Despite the holding in these cases which clearly justified the jury in this case in finding a verdict in favor of the plaintiffs, counsel for the appellant herein contend that the emergency brake was intended only as a parking brake under the provisions of § 60-733 (a) (5), W.C.S. 1945 (1957 Cum. Pocket Supp.), as follows:

"One of the means of brake operation shall consist of a mechanical connection from the operating lever to the brake shoes or bands and this brake shall be capable of holding the vehicle, or combination of vehicles, stationary under any condition of loading on any upgrade or down grade upon which it is operated."

Similar provisions were contained in the New York statute as mentioned in People v. Cicardo, supra, and the court in that case held that such provision was not inconsistent with the general provision in reference to the requirement as to brakes. It may be noted that the subdivision merely states: *"One of the means* of brake operation shall consist", etc. (Emphasis supplied.) That does not preclude the intention of *other* means. We do not think that this subdivision in any way modifies subdivision (1) of that section as quoted supra.

We think, accordingly, that the jury were fully justified in not considering the collision unavoidable and returning the verdict herein in favor of the plaintiffs.

Counsel for appellant Rutz contend that the verdict in favor of Orville W. Anderson is excessive in view

of the fact that he was 85 years of age and his expectancy of life was only 3.08 years. They contend that a verdict of $10,000 would have been sufficient. We have read the argument carefully and considered that in connection with the evidence in the case. Anderson, notwithstanding the expectancy of life, may live considerably longer than three years. It appears herein that he is unable to walk without assistance. He is totally and permanently disabled and requires constant care and attention for the remainder of his life. He receives medical treatments every week. He is bedridden most of the time and is compelled to hire a nurse to take care of him at all times. We think there is no merit in the contention that the verdict is excessive, and it and the judgment herein are affirmed.

Affirmed.