McBRIDE, Judge.
This is a tort action brought by Daniel Boone, as plaintiff, against New Orleans Public Service, Inc., a public utility company, as defendant, for damages for physical injuries sustained by virtue of an electrical shock which he sustained on January 19, 1955, about 11:30 a. m., on Touro Street, between Catón and Foy Streets, in New Orleans, while standing alongside the chassis of a truck-type crane, which was engaged in work then being done by the City of New Orleans, to which was appended a boom which at the moment of the accident came into contact, or nearly *801 so, with one of defendant’s high-tension power wires situated on the uptown side of Touro Street, said wires paralleling Touro Street and being strung on poles positioned between the sidewalk and the street. Plaintiff’s body, in all probability one of his hands, was touching the crane when the accident occurred. As a result of the contact between the boom and the wire, part of the force or voltage of the electrical energy carried by the wire passed therefrom into the boom, then to the crane, and thence through plaintiff’s body into the ground. Plaintiff’s suit was tried by jury which returned a verdict in favor of the defendant, and ultimately, in accordance with the verdict, there was judgment by the court dismissing plaintiff’s suit, from which he has appealed to this court.
The grounds of negligence charged against the defendant as predicate for the claim for damages are set out in the petition thusly:
“ * * * That said accident was caused by the negligence of the defendant, the exact nature of which is unknown to petitioner, in that there was some defect in the above property of defendant which allowed electric current to bridge the distance between the property of defendant and the said boom. That said accident would not have taken place without the negligence of defendant. That defendant had the exclusive control over the in-strumentalities causing said accident and has the peculiar knowledge of the facts causing same.”
The defendant denies these allegations and disavows negligence and alleges that its wires, property and equipment were erected and maintained in accordance with sound and proper practice and in good condition at the time of the accident, and that the accident did not arise through any fault of the defendant but was occasioned by negligence and carelessness on the part of the plaintiff or others in bringing the boom of the crane into contact with defendant’s wires. Alternatively, defendant charges plaintiff with contributory negligence averring that he walked into the side of the crane when the boom thereof was in contact with defendant’s wires; that he failed to ascertain the position of the boom before walking beside the truck; that he failed to exercise that degree of care and caution which the circumstances then and there existing necessitated.
Plaintiff at the time of the accident was a laborer in the employ of the City of New Orleans which was resurfacing Touro Street; the street was torn up and the crane and boom, with a bucket attached, was brought into position for the purpose of removing a mound of dirt; the situs of the accident or point of contact between the boom and wires was on the uptown side of Touro Street approximately 36 feet toward the river from the second line pole from Catón Street; the boom, the base of which was 5 feet above the ground, had a length of 30 feet 10 inches and was capable of being raised to its maximum height. Plaintiff, for a personal reason, took his position alongside the chassis of the crane, and at that moment the operator of the boom somehow brought the boom into contact or near contact with the “C” phase of defendant’s three-wire system high-tension line, thereby occasioning the shock which injured plaintiff. The “C” phase wire was 32 feet 10 inches above the surface of Touro Street, and the other two phases of the three-circuit system were, respectively, 33 feet 8 inches and 33 feet 4 inches above ground level. The record is convincing that at no point on Touro Street between the line pole above alluded to and the next pole toward the river was any portion of the power lines or wires in question less than 30 feet above Touro Street; the distance between the two poles carrying the wires appears to have been 118 feet 7 inches. The three-phase wire system carried approximately 13,200 volts of electrical energy at the time, but 7,800 volts would be the maximum the “C” phase or any of the two other wires could carry to the ground.
*802 One point stands out in relief. The employee of the City of New Orleans named Rogers who operated the crane had never obtained a license to engage in said trade. On a previous occasion while operating another crane, Rogers negligently caused a high-tension wire to burn, this incident having occurred about a year before the trial below. It is also clear from the record that Rogers had been warned by his superiors almost every time he used the crane not to swing or place the boom in the proximity of the electrical wires. On the day following the accident which gives rise to this suit, Bradley, who is connected with defendant’s Claim Department, visited the scene and saw Rogers raise the boom above the electric wires and dangerously close thereto, and he warned Rogers of the hazardous potentialities of the situation.
When the matter was heard before us, plaintiff’s counsel advanced the contention, but did not seriously press the matter, that the electrical charge that went down the boom and injured plaintiff “jumped” 5 feet from the wires to the boom. One of plaintiff’s witnesses testified the “jump” was a distance of 10 feet; Rogers said it was 5 or 6 feet. Certain expert testimony produced by the defendant shows that under the circumstances prevailing, such a phenomenon could not possibly take place over a greater space than a fraction of an inch, and this testimony impresses us to the extent that we have no doubt at all that there was no such “jump” as was described by plaintiff and his witnesses. We are amply satisfied that the boom came into direct contact with the wires, or at least was not more than a small fraction of an inch therefrom when the unfortunate accident occurred.
It also appears that according to Ordinance No. 15,603, as amended, Commission Council Series of New Orleans, defendant was not required to insulate the electric lines in question, it being provided therein that all electric light and power conductors, cables and wires, used in overhead construction outside of the established underground district (Touro Street not being in said district) which shall be erected to carry 13,200 volts or more, “need not be covered by insulation but may be strung bare.” The said ordinance provides further:
“ * * * The safety of all above systems shall be determined by their conformity with the safety rules for installations and maintenance of electric supply and communication lines of United States Department of Commerce National Bureau of Standards Handbook H32.”
The prevailing Handbook of the United States Department of Commerce, National Bureau of Standards, with reference to the installation and maintenance of electric supply and communication lines and safety rules contains no provisions that such wires must be insulated, and according to the Handbook the minimum vertical clearance above ground level for open supply line wires, arc wires and service drops carrying from 750 to 15,000 volts of electricity on streets or alleys in urban districts shall be 20 feet. The lowest of defendant’s wires was 32 feet 10 inches above the ground, and plaintiff makes no pretensions that the wires were not strung and maintained or that the poles supporting them were not set in accordance with the City ordinances and the provisions of the Handbook above-mentioned. It cannot be gainsaid that defendant’s wires were some 12 feet •above the minimum vertical clearance required by the rules laid down in the Handbook of the National Bureau.
Courts of this state in several cases accepted the recommendations of the National Bureau of Standards of the United States Department of Commerce in the matter of electrical construction. Webb v. Louisiana Power & Light Co., La.App., 199 So. 451; Welsh v. Gulf States Utilities Co., La.App., 32 So.2d 723; Coulon v. City of Alexandria, La.App., 44 So.2d 171; Calton v. Louisiana Power & Light Co., La.App., 56 So.2d 862, affirmed 222 La. *803 1063, 64 So.2d 432. It has been judicially-recognized. also that modern practice does not require that high-tension wires suspended as high as 30 feet from the ground be insulated. Boudreaux v. Louisiana Power & Light Co., 16 La.App. 664, 135 So. 90.
Counsel for plaintiff argues that defendant had direct notice and was fully apprised of the fact that the City would perforin the work on Touro Street, and such notice or knowledge was sufficient to have caused defendant to anticipate an accident of such nature as the one involved in this suit, as it was reasonable to suppose that some of the machinery or equipment employed in the work would come into contact with defendant’s power lines and produce injury to workmen on the job or to other persons who happened to be in the vicinity. We note from the record that plaintiff introduced into evidence a letter bearing date June 30, 1954, written by the Engineering Division of the City of New Orleans to the vice-president of the defendant, attaching certain prints of the City’s plans for subsurface drainage on Touro Street and informing defendant that bids for the work would be opened in a short time thereafter. Defendant was advised that if there was conflict between the proposed work and the then present or proposed activities of the defendant, that it should notify the Engineering Division of the City. Another letter was produced and made part of the evidence by plaintiff bearing date of August 9, 1954, which was written on behalf of the City of New Orleans and addressed to defendant’s vice-president, conveying the information that the construction on Touro Street, as shown on plans enclosed, was about to be started. Defendant was requested to notify the City of any conflict that might prevent the coordination of these installations and defendant’s then present or proposed activities or work.
Testimony elicited from the City Engineer and Chief Engineer of the City Engineering Department shows that similar work is almost continually being performed on the streets in various sections of the City and that such letters as plaintiff introduced are merely sent as a matter of form on occasions where there is some thought that there might be a conflict between the proposed work and the existing or contemplated installations of the New Orleans Public Service, Inc. In other words, the purpose of the City was to ascertain whether some of the gas mains or underground installations, etc., of the New Orleans Public Service, Inc., would sustain injury or damage as a result of the work proposed to be done by the City, and whether it would behoove the defendant to take cognizance of the situation and adopt measures to protect its property. These letters could not be so construed as intended to import a notice by the City to defendant that equipment which the -City utilized on the job would come into contact with the overhead power lines maintained by the defendant.
Plaintiff’s counsel takes the position that defendant was negligent in not warning Rogers that he should not operate the crane in such a manner as to result in the boom coming into contact with the wires. Defendant gave no such warning to the operator of the crane, but assuming, but certainly not deciding, that the defendant owed plaintiff the legal duty of giving .such warning to Rogers, still there would have been no negligence in defendant as such warning woud have been entirely ineffectual. As hereinabove stated, the unlicensed operator of the crane had on numerous occasions been admonished by his superiors that he must not permit the boom to touch the power lines, but notwithstanding this, he permitted the contact to be made, resulting in the alleged injuries sustained by plaintiff. Any lack of warning which counsel insists should have been given by defendant played no part in the occurrence.
In brief counsel for plaintiff makes the following statements:
“As previously shown, defendant had actual and constructive knowledge *804 that the City of New Orleans was to do construction work where this accident happened. Defendant knew that cranes and other heavy equipment would be used for this purpose. Also, defendant knew it had high tension electric lines with their dangerous propensities immediately above the work area. Hence, a duty was created which did not exist previously without such knowledge and it then became in-' cumbent upon defendant to take some action to eliminate or make less likely an accident. Defendant admittedly did nothing.”
Nowhere in oral argument or brief did counsel attempt to point out just what duty defendant owed to plaintiff remained unfulfilled and what, -if any, actions or steps defendant might have taken to eliminate or make less likely the accident which caused the injury which befell plaintiff. There was not the remotest showing made by him that defendant could have taken any reasonable measures to eliminate the possibility of an accident and' we can think of none. We can comprehend no breach of any legal duty by defendant. It is an undeniable fact that the power lines of New Orleans Public Service, Inc., were erected and maintained in conformity with the recognized and. accepted rules applying to eletrical construction set forth in local ordinances governing such construction and as provided by the National Bureau of Standards. The power line was above the minimum height required by the safety rules, and defendant committed no breach of legal duty in formulating a belief they were beyond the reach of a person engaged in ordinary pursuits.
The Second Circuit Court of Appeal and the Supreme Court in Calton v. Louisiana Power & Light Co., supra, were confronted with similar facts and the identical issues the instant case presents. In said case plaintiff’s son was the employee of a sawmill company and worked upon a machine known as a log loader, upon which was a boom. This boom contacted defendant’s high-voltage electric line when the driver of the machine endeavored to take it under the line, resulting in the electrocution of plaintiff’s son. Briefly, the acts of negligence charged to defendant are that the wires were strung on poles at an excessive distance apart causing the wires to sag; that the wires were uninsulated and at an insufficient height to protect the users of log loaders in and about the sawmill. It was alleged that the officials of the electric company knew sawmills used booms extending many feet into the air and having such knowledge the defendant should have either raised the lines to a safe height or have insulated them. The evidence in the case showed that with an actual clearance of 23 feet defendant’s line was 8 inches above the recommended standard, and the court concluded that as such height met with accepted standards, it was sufficient and as to defendant the accident was not within reason foreseeable or to be anticipated. Defendant was absolved from blame and the suit ws dismissed.
After a hearing on writs of review, the Supreme Court (222 La. 1063, 64 So.2d 432, 433), affirmed and approved what had been said by the Court of Appeal and commented thus :
“As cause of action the plaintiff alleged, and still contends, that the officials of the defendant, with their knowledge that sawmills use booms and derricks, should have anticipated an occurrence of this nature, and are guilty of negligence in failing to insulate these wires and in. stringing them between poles located too far apart. The Court of Appeal, in a well-considered opinion wherein the facts are correctly stated and the issues clearly drawn, with a proper application of the law rejected these contentions, finding as a fact that the defendant’s lines complied with all recognized standards of electrical construction, particularly those recommended by the National Bureau of Standards of the U. S. Department of Commerce, and were at a proper *805 height to safeguard against a contingency that could reasonably be foreseen or expected. * * * ”
In view of the facts of the case and the above jurisprudence, our final conclusion is that the accident is not one the defendant should have foreseen or anticipated and did not arise from any fault of defendant; therefore, no recovery may be had by plaintiff.
For the above reasons, the judgment is affirmed.
Affirmed.