**Hulin TULLIER, Plaintiff,**

v.

**GULF STATES UTILITIES COMPANY, Defendant and Third-Party Plaintiff,**

v.

**FIDELITY AND CASUALTY COMPANY OF NEW YORK and Lamar Brooke, Inc., Third-Party Defendants.**

**Civ. A. No. 2530.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Jan. 18, 1963.

Arthur Cobb, Baton Rouge, La., for plaintiff.

David W. Robinson, Baton Rouge, La., for Fidelity & Casualty Co. of New York and Lamar Brooke, Inc., third-party defendants.

Frank W. Middleton, Jr., Baton Rouge, La., for Gulf States Utilities Co., third-party plaintiff.

WEST, District Judge.

This is an action brought by complainant, Hulin Tullier, seeking to recover damages from respondent, Gulf States Utilities Company, for personal injuries allegedly sustained as a result of the negligence of the respondent. Complainant received an electrical shock and burn when, while working as an employee of Lamar Advertising Company, on an outdoor advertising sign owned by Lamar Brooke, Inc., a metal ladder which he was using came in contact with an electric conductor wire belonging to respondent, Gulf States Utilities Company. Respondent defends on the grounds that it was not guilty of any negligence, and that alternatively, the complainant was guilty of contributory negligence barring any right of recovery that he might otherwise have had. An intervention was filed by Fidelity and Casualty Company of New York, the workmen's compensation insurer of Lamar Advertising Company, seeking to recover, out of any award made to the complainant, the amount of workmen's compensation benefits previously paid. A third party complaint was also filed by the respondent, Gulf States Utilities Company, against Lamar Brooke, Inc. for contribution and/or indemnity. The case was tried to the Court, without a jury, and submitted on the record, oral arguments, and briefs.

## FINDINGS OF FACT

### 1.

Complainant, Hulin Tullier, is a citizen of the State of Louisiana, and the respondent, Gulf States Utilities Company, is a citizen of the State of Texas, authorized to do and doing business in the State of Louisiana.

### 2.

At the time of the accident, on November 2, 1960, complainant was working in the course and scope of his employment with Lamar Advertising Company.

### 3.

The outdoor advertising sign or billboard on which complainant was working at the time of the accident was owned by Lamar Brooke, Inc. who, having no repair or maintenance crews, subcontracted out all repair and maintenance work on its signs to Lamar Advertising Company. When Lamar Brooke, Inc. contracted with advertisers for the use of its signs, they, Lamar Brooke, Inc., were obligated to the advertiser for all repairs and maintenance on the signs. Therefore, such services, even though not

performed by them, were a part of the regular trade, business and occupation of Lamar Brooke, Inc.

4.

In 1931, respondent, (through a predecessor company), acquired a right-of-way 10 feet wide, the center line of which was located 25 feet east of the center line of Louisiana Highway No. 415, and running parallel with said highway, for the purpose of constructing and maintaining electric distribution lines. Immediately thereafter, respondent, Gulf States Utilities Company, constructed its distribution lines along this right-of-way, where they have remained ever since. The only significant change made during the intervening years insofar as these lines are concerned is that they have been converted to higher voltage through the years. They presently carry a voltage of 13,200 volts between conductors, or 7,600 volts from any one conductor to ground. There are four wires or lines erected along and within the right-of-way, one being a static neutral conductor, and the other three carrying voltages as previously indicated.

5.

The conductors, or wires, are supported by the usual and customarily-used wooden poles, placed, at this particular location, 278 feet apart. The conductors are made of bare, uninsulated copper.

6.

At the location of the accident involved, the wire conductors were located 32 feet above the ground.

7.

It is neither customary under the circumstances of this case, nor required by the National Electric Safety Code, to insulate such conductors or distribution lines as are here involved.

8.

Approximately 15 or 16 years ago, probably around 1947, Lamar Advertising Company constructed and erected the sign involved in this suit. (The ownership of this sign was later acquired by Lamar Brooke, Inc., and was so owned at the time of this accident.) At that time the distribution lines of Gulf States Utilities had been in place approximately 16 years. The sign was erected approximately parallel to the distribution lines and parallel to Louisiana Highway No. 415.

9.

The sign was placed approximately 36 feet east of the center line of Louisiana Highway No. 415, and 11 feet east of the center line of the right-of-way belonging to respondent, Gulf States Utilities. This sign was about 48 feet long, and was constructed on seven posts or poles in such a manner as to make the top of the sign 40 feet above the ground, with the bottom of the sign 28 feet above the ground.

10.

To facilitate working on the sign, a catwalk or platform 53 inches wide was built along the front of, and along the entire length of the sign at a point 4 feet 5½ inches below the bottom of the sign, and 23 feet 10 inches above the ground. When working on the sign, a scaffold is hung from the top of the sign on which workers may pull themselves up to the desired height to work on the sign. To get onto the scaffold, it is necessary for the worker to first get on to the catwalk by use of a ladder, and from there he can get on to the adjustable scaffold.

11.

The distance from the nearest conductor or wire to the face of the signboard, measured horizontally, was 8 feet 10 inches. It was a distance of 9 feet 3.4 inches from the nearest wire directly to the front edge of the catwalk. At no point was the clearance between the sign or any of its attachments and the conductors or wires less than 8 feet.

12.

On November 1, 1960, complainant had worked on this sign. He and his coworker, Mr. Williams, had used a metal ladder to get on to the catwalk. They had, on that occasion, braced the ladder

against the end of the catwalk, parallel with the wires, and thus ascended to the catwalk. However, on the day of the accident, November 2, 1960, they found that the wood at the end of the catwalk was rotten and so decided to place their ladder against the front of the catwalk, perpendicular to it and the wires, in order to ascend to the catwalk.

### 13.

Complainant and his co-worker, Mr. Williams, were using a metal extension ladder composed of two sections, each 19 feet 9 inches long. At the time of the accident they had extended the ladder to a length of 34 feet. In order to place the ladder against the catwalk they first placed the base or bottom of the ladder either against one of the signboard poles or near the base of the sign where Mr. Williams was holding it in place. Complainant then walked under the ladder, pushing it upward. As he got the ladder close to an upright position, Williams attempted to "walk" the base of the ladder outward from the sign to allow the top of the ladder to fall inward against the catwalk. While this operation was being attempted, the upper part of the ladder came into contact with one of the electric distribution wires, causing complainant to receive an electric shock resulting in the injuries herein sued for.

### 14.

This sign had been re-painted and otherwise worked on at least twice each year for the preceding fifteen years, during all of which time the electric distribution wires were in the same location as they were on November 2, 1960, and there had been no previous accidents resulting therefrom.

### 15.

Complainant was well aware of the existence and location of the wires, but as he stated, he "just paid no attention to them".

### 16.

The National Electric Safety Code, published by the Bureau of Standards, United States Department of Commerce, is generally accepted throughout the United States and the electrical industry as setting the minimum standards of safety with regard to construction and location of electric utility lines.

### 17.

As a result of the accident complained of, the complainant did sustain certain personal injuries which, in view of the Court's holding herein, need not be discussed in detail.

## CONCLUSIONS OF LAW

### 1.

The National Electric Safety Code sets forth no specific clearance for wires erected in close proximity to signboards. However, in Section 232 thereof, it states that the minimum vertical clearance over public streets, alleys or roads in urban or rural districts for wires carrying 750 to 15,000 volts shall be a minimum of 20 feet.

### 2.

In Section 234–C of the National Electric Safety Code, it is provided that wires or conductors carrying 8,700 to 15,000 volts shall be so erected as to have an 8-foot vertical and an 8-foot horizontal clearance from any building or its attachments such as balconies, platforms, etc. It further provides that if the building is over three stories, or 50 feet high, overhead wires should be so erected as to provide a clear space at least 6 feet wide to facilitate raising of ladders when necessary for fighting fires.

### 3.

Section 234 of the National Electric Safety Code provides that wire conductors carrying 8,700 to 15,000 volts near a bridge should have a minimum horizontal and vertical clearance of 5 feet from the bridge or its attachments.

### 4.

While as previously stated, the Code does not specifically provide clearance with regard to signboards, nevertheless the provisions herein quoted form a reasonable guide by which to determine safe

clearances and distances. Section 200 of the Code provides that construction should be made according to accepted good practices for the given conditions in all particulars not specified in the rules. There is nothing under the particular conditions or circumstances of this case that would indicate or require greater clearances than those provided in the Code for wires or conductors close to buildings, streets or bridges.

### 5.

The electrical distribution lines of the respondent, Gulf States Utilities Company, at the place of this accident, were constructed and erected in accordance with all known safety regulations, and were particularly within the minimum safety standards set forth by the National Electric Safety Code. There is no requirement in the Code for insulating such distribution lines under the conditions prevailing at the location of this accident. Boone v. New Orleans Public Service, Inc., La.App., 109 So.2d 800; Bujol et ux. v. Gulf States Utilities Co., La.App., 147 So. 545; Higginbotham v. Louisiana Power & Light Co., La.App., 198 So. 402.

### 6.

There was no evidence in this case to show, or even to suggest, that the respondent, Gulf States Utilities Company, was guilty of any negligence proximately causing this accident.

### 7.

On the contrary, there is ample evidence to establish the fact that the complainant was guilty of negligence proximately causing this accident. It was negligence for the comlainant to use a 34-foot metal ladder to ascend to a platform 23 feet 10 inches high when he knew or should have known that high voltage wires passed overhead at a height of 32 feet. Complainant admitted that he knew the wires were there but "just paid no attention to them." This was negligence proximately causing the accident and injuries complained of.

### 8.

The demands of the complainant must therefore be denied, and the intervention of Fidelity and Casualty Company of New York, the workmen's compensation insurer of Lamar Advertising Company, therefore necessarily falls. The third party complaint filed by Gulf States Utilities Company against Lamar Brooke, Inc. was dismissed during the trial on the grounds that the liability, if any there had been, on the part of Lamar Brooke, Inc. was exclusively under the Louisiana Workmen's Compensation Laws, and that therefore, the third party complaint failed to state a claim upon which relief could be granted.

Judgment should be presented in accordance herewith.